## A02A0203. THE STATE v. MADDOX.
(556 SE2d 501)

ELDRIDGE, Judge.

The State Court of Gwinnett County granted Gregory Scott Maddox's motion to suppress the results of a DUI investigation, finding that the stop of Maddox's vehicle was not based on articulable suspicion. Because the substance of the 911 call communicated to the officers in dispatching them to the scene provided reasonable articul-

able suspicion to perform an investigative stop of Maddox's vehicle, we reverse the judgment of the court below.

Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to the undisputed facts is subject to de novo review.[1] Viewed in this light, the record reveals that at approximately 11:13 p.m., Gwinnett County Police Officers C. S. Boekel and M. D. Grap were dispatched to the Three Dollar Café pursuant to a call made by the manager, Kevin Egan, complaining that a man named "Stacey Phillips" was making trouble in the restaurant. Officer Boekel's police report showed that Egan "told all communications" that Phillips "was causing problems, had been drinking, was possibly carrying a knife, and had a history of mental problems. Egan wanted the subject to leave and receive a criminal trespass warning."

Backup Officer Grap arrived on the scene first; he was in uniform and driving a fully marked police car. The manager of the Three Dollar Café was in the parking lot, waiting. Upon Grap's arrival, the manager pointed to a green truck. He informed the officer that Phillips had gotten into the truck. Simultaneously, Officer Boekel arrived and witnessed Officer Grap's attempts to flag down the truck. Boekel testified that "he [Grap] tried to stop the truck and it drove around him. As it was leaving the parking lot, I pulled up and got the truck stopped." Grap joined Boekel across the street where the truck was stopped. Grap approached the passenger window and spoke to Phillips. Officer Boekel approached the driver's side and spoke to appellant Maddox. Subsequent investigation led to the arrest of Maddox for DUI, driving with a suspended license, and violation of the open container law.

Maddox filed a motion to suppress. Following the evidentiary hearing thereon, the trial court found:

> I don't know why we have police officers in the business of giving criminal trespass notices to folks that are cutting up in a restaurant. It seems like to me that's a little bit outside of police duties. . . . I think we have to have a reason to pull a vehicle over other than we just want to notify the passenger not to come back to the Three Dollar Café.

The trial court granted Maddox's motion to suppress. *Held*:

In reviewing a trial court's decision on a motion to suppress which in effect precludes the prosecution of a criminal defendant, our responsibility is to ensure that there was a substantial basis for the decision. In so doing, " 'we may consider all relevant evidence of

---

[1] *State v. Becker*, 240 Ga. App. 267-268 (523 SE2d 98) (1999).

record, wherever located.' "[2]

Here, the facts are not in dispute. Based on the record, which includes the contents of Officer Boekel's police report and the information given to the officers via police radio, there is no question that the officers were dispatched to the Three Dollar Café to do more than give Phillips a criminal trespass warning; the initial dispatch included the possibility that the drunk, problem-causing Phillips would have to be forcibly removed. Further, based on radio dispatch information, Phillips had been doing more than "cutting up in a restaurant," which phraseology creates an image of youthful hijinks, instead of the multiple drunken episodes reported by the restaurant manager, which were exacerbated highly by the fact that Phillips was mentally unstable and may have been carrying a knife.

Police officers are authorized to use information received by radio dispatch as part of their basis for articulable suspicion to conduct a stop.[3] To allow Phillips to simply drive away from the scene without further investigation of the 911 call would have been irresponsible, even if such investigation included the officers' stated desire to give Phillips criminal trespass warnings. "In *Burgeson v. State*,[4] information provided by other officers as communicated in a [911] dispatch provided the basis for reasonable and articulable suspicion to justify a stop. The same concept applies in the present case."[5]

Based on the record, we find as clearly erroneous the conclusion that the stop of Maddox's car was without reasonable articulable suspicion. The motion to suppress on such grounds should not have been granted.

*Judgment reversed. Smith, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 13, 2001.

*Gerald N. Blaney, Jr., Solicitor-General, Emilien O. Loiselle, Jr., Jeffrey P. Kwiatkowski, Assistant Solicitors-General*, for appellant.
*Jeffrey R. Sliz*, for appellee.

---

[2] *Jackson v. State*, 230 Ga. App. 292, 296 (6) (496 SE2d 315) (1998); *Gray v. State*, 207 Ga. App. 648, 650 (428 SE2d 663) (1993).

[3] *Cunningham v. State*, 231 Ga. App. 420, 421-422 (498 SE2d 590) (1998).

[4] 267 Ga. 102, 105 (3) (a) (475 SE2d 580) (1996).

[5] *State v. Pennyman*, 248 Ga. App. 446, 447 (545 SE2d 365) (2001).