## A02A0831. EDWARDS v. THE STATE.
### (560 SE2d 735)

ELDRIDGE, Judge.

A DeKalb County jury found Michael Edwards guilty of possession of cocaine.[1] He appeals from this verdict and, in his sole claim of error, contends the trial court erred in denying his motion to suppress the drugs in question as their seizure was allegedly the result of a *Terry*[2] investigative detention unsupported by reasonable articulable suspicion. We disagree and affirm Edwards' conviction.

The defense did not put up evidence at the motion to suppress. The State's evidence shows that, during roll call at the beginning of the 2:45 p.m. to 10:45 p.m. shift, DeKalb County police officers were informed that the manager of the Howard Johnson motel on the Northeast Expressway in DeKalb County had telephoned in order to report drug sales occurring at the motel; further information revealed that the sales were occurring specifically out of room 112 of the motel. Drug activity occurred frequently at the motel, and the manager had called "on many occasions" to report such activity when it was observed.

During the shift, DeKalb County Police Officer R. Jimenez responded to the Howard Johnson dispatch. He had been to the motel several times before on drug investigations. Based on information he had received, Jimenez placed room 112 under surveillance from a vantage point where he could not be seen. Shortly thereafter, he observed Edwards and another man walking across the inner courtyard toward room 112, which was a ground floor room. "[T]hey were looking around as they were approaching the room," apparently in an attempt to see if they were being observed by anyone. The men went directly to room 112 and stopped in front of the door. At that point, Officer Jimenez, in full uniform, stepped into view. Edwards and the other man saw Jimenez, and they "abruptly" turned away from the

---

[1] Edwards was indicted and tried for possession of cocaine with intent to distribute.

[2] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

room; the men began to hurriedly walk in the opposite direction from the police officer.

Thereafter, Jimenez called to them to "stop," at which point "[t]hey looked back and kept walking." The officer had to run to catch up with them in order to stop them. Edwards had both of his hands in the front pockets of his pants. When he was asked to remove them for the officer's protection, he would not. From experience as a police officer, Jimenez had determined that "when people keep their hands in pockets, it's because they have a gun or knife, and they don't want their hands out of their pockets." The officer asked Edwards "repeatedly" to remove his hands, but "Mr. Edwards did not take his hands out of his pocket, at any time."

Finally, Officer Jimenez put Edwards on the ground on his stomach in order to secure his hands behind his back with cuffs. Edwards still would not remove his hands from his pockets and was lying on top of them. Other police officers arrived as backup, and several officers attempted to aid Jimenez in removing Edwards' hands from his pants pockets: "it took approximately three officers to get his hands out from underneath him, so he had been laying on them on the ground. . . . We kept telling him we needed to see his hands. We had no idea what he had in his hands, in his pockets. We just continued to, you know, try and get ahold of his arms, to pull his arms back behind him." Once he was secured, the officers lifted Edwards off of the ground. "And his pants were unzipped, his boxers were pulled out threw [sic] his underwear, and there was a crack — baggy of crack located right in the vicinity of his crotch, where he was laying face down in the kudzu." The contraband was retrieved from the kudzu. *Held*:

> [A]rticulable suspicion that the law has been or is about to be violated is less than probable cause, but greater than mere caprice. What is necessary is a founded suspicion, some basis from which the court can determine that the detention was not arbitrary or harassing. Thus, in cases where there are some reasonable articulable grounds for suspicion, the state's interest in the maintenance of community peace and security outweigh[s] the momentary inconvenience and indignity of investigatory detention. Each case turns on its own circumstances.[3]

(a) In this case, the Howard Johnson motel was the scene of frequent drug investigations and was a known drug sale location. The

[3] (Citations and punctuation omitted.) *Garmon v. State*, 271 Ga. 673, 677 (524 SE2d 211) (1999).

information was that drug sales were *currently* occurring *specifically* in room 112 of the motel, and such information was provided by a known, credible concerned citizen who had provided information about drug activity at other times prior to the incident in question.[4] Further, this information was relayed to Jimenez by fellow police officers as dispatch information.[5] This dispatch information, coupled with (a) Edwards' and his companion's behavior in looking around for possible observation of their activities; (b) their clear connection to the specific room in which current drug activity had been reported; and (c) their otherwise inexplicable and "abrupt" departure from the door of that room upon seeing Officer Jimenez — a location at which they had only just arrived — provided a reasonable articulable suspicion that would justify a brief *Terry* detention of Edwards and his companion in order to investigate their connection to the reliable report of drug activity in room 112.[6]

We reject Edwards' contention that our decision in *Barnes v. State*[7] requires a different end. This Court reversed in *Barnes* because the investigatory stop at issue was predicated solely on the defendant's presence in a general area known for drug crime and he walked away when he saw a police officer. As described above, however, this case turns on more; a reasonable nexus can be inferred between the current drug activity, the specific location, and Edwards' abrupt, immediate, and otherwise inexplicable attempts to remove himself therefrom upon spotting law enforcement. Accordingly, *Barnes* does not authorize a reversal.[8]

(b) Because Officer Jimenez had a reasonable articulable suspicion to perform a brief *Terry* investigatory detention, Edwards' and his companion's refusal to stop at Jimenez's oral request to do so provided a basis for the officer to pursue the men and detain them for questioning. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable

---

[4] See *Penny v. State*, 248 Ga. App. 772, 775 (2) (b) (547 SE2d 367) (2001) ("a law-abiding concerned citizen has a built-in credibility and is deemed to be reliable"); accord *Yearwood v. State*, 239 Ga. App. 682, 683 (521 SE2d 689) (1999); see also *Williams v. State*, 193 Ga. App. 677, 680 (388 SE2d 893) (1989), overruled on other grounds, *Davis v. State*, 266 Ga. 212 (465 SE2d 438) (1996) (manager of rental unit considered concerned citizen providing information about drug activity therein).

[5] See *Cunningham v. State*, 231 Ga. App. 420, 421 (498 SE2d 590) (1998) ("In forming an articulable suspicion, an officer is entitled to rely on the information given him by a fellow officer.") (punctuation omitted); accord *State v. Maddox*, 252 Ga. App. 414 (556 SE2d 501) (2001); see also *Overand v. State*, 240 Ga. App. 682, 683 (1) (523 SE2d 610) (1999) (information from police dispatcher sufficient to support a *Terry* investigative stop).

[6] *Johnson v. State*, 230 Ga. App. 535, 537 (496 SE2d 785) (1998).

[7] 228 Ga. App. 44 (491 SE2d 116) (1997).

[8] *Gonzales v. State*, 235 Ga. App. 253, 254-255 (509 SE2d 144) (1998); *Singleton v. State*, 235 Ga. App. 88, 89-90 (508 SE2d 461) (1998).

cause to arrest to simply shrug his shoulders and allow a criminal to escape."[9]

(c) Finally, "[i]t is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed."[10] That the defendant several times refused to take his hands out of his pockets after being asked to do so "is not inconsistent with the reasonable belief that he might have been armed as a drug trafficker."[11] Accordingly, Edwards' refusal to cooperate and show Jimenez his hands for the officer's safety constituted an obstruction of a lawful investigation and provided probable cause to arrest for obstruction.[12]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 20, 2002 — 

*Ruth L. Rocker*, for appellant.

*J. Tom Morgan, District Attorney, Joseph N. Walden III, Jeanne M. Canavan, Assistant District Attorneys*, for appellee.

---

[9] (Citations and punctuation omitted.) *Holcomb v. State*, 191 Ga. App. 379, 380 (381 SE2d 594) (1989); accord *Stewart v. State*, 236 Ga. App. 888 (513 SE2d 778) (1999).

[10] (Citations and punctuation omitted.) *Stewart v. State*, 227 Ga. App. 659, 660-661 (2) (490 SE2d 194) (1997).

[11] *Satterfield v. State*, 251 Ga. App. 141, 144 (553 SE2d 820) (2001).

[12] *Green v. State*, 240 Ga. App. 774, 775 (525 SE2d 154) (1999); *Tuggle v. State*, 236 Ga. App. 847, 849 (1) (d), (e) (512 SE2d 650) (1999).