## A02A1276. OSMENT v. THE STATE.
(569 SE2d 262)

MIKELL, Judge.

A jury found James Edward Osment guilty of possession of marijuana with intent to distribute. Osment appeals. Osment contends that the trial court erred in denying his motion to suppress evidence because he was seized and detained without probable cause; that his detention exceeded the scope allowed by *Terry v. Ohio*;[1] and that because of the unlawful detention, the subsequent search of his bag was also unlawful. For the reasons set forth below, we disagree and affirm.

A trial court's order on a motion to suppress will not be disturbed if there is any evidence to support it.[2] The evidence presented in the instant case shows that while working at the North Georgia State Fair, Captain John Koehler[3] of the Cobb County Sheriff's Office received a radio dispatch to be on the lookout for a man selling drugs. The dispatch described the man as in his fifties, wearing blue jean shorts and a light colored shirt with dark colored sleeves, and carrying a blue bag with maroon straps. A deputy spotted an individual who matched the description, but lost sight of him among a group of trailers used to house the carnival workers. The deputy notified Captain Koehler, who went to the area to investigate. Koehler found two trailers, and when he knocked on the second trailer and identified himself as a law enforcement officer, he could feel the trailer shake as people ran around inside. An agitated Osment suddenly bolted out the door, came very close to the officer's person, and told Koehler that he was hassling him, and that he had done nothing wrong. Osment had two very large bulges in his blue jean pants pockets. Koehler was concerned for his safety, and so he asked two other deputies to pat

---

[1] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[2] *Hobdy v. State*, 222 Ga. App. 625 (475 SE2d 686) (1996).

[3] The officer testifying at the hearing on the motion to suppress is sometimes identified as "Culver" in the transcript of that proceeding, but it appears from the trial transcript, and is noted by the state in its brief, that the officer's name is Koehler.

Osment down. Deputies found several rolls of money, keys, a lighter, along with an empty pack of cigarettes and rolling papers in Osment's pants pockets.

While the deputies searched Osment, Koehler spoke to the second person in the trailer, Robert Wallace, who invited the officer inside. Koehler asked Wallace if the police could search the trailer, and Wallace consented, but told Koehler that, although he was staying at the trailer, he was not the owner. During this conversation, another detective saw a marijuana cigarette in the kitchen sink, which was in plain view from the entrance of the small trailer.

The detectives contacted the owner of the trailer, Billy Morris, who consented to a search. The search revealed a blue bag under the bunk bed. Inside the blue bag were six smaller bags containing marijuana, a set of postal scales, and a master lock key engraved with the number 3122. Osment denied that he owned the bag, but a master key with the number 3122 was found in his pockets. Deputies found four more small bags containing marijuana under the mattress of the top bunk. The marijuana weighed 1.7 ounces.

Osment argues that, under *Terry* and *Alabama v. White*,[4] in order for an anonymous tip to provide a basis for the police to make an investigatory stop, the tip must provide a basis for predicting the future behavior of the suspect. But Osment was not detained on the basis of an anonymous tip alone. The initial contact between Captain Koehler and Osment was made after Koehler knocked on the trailer door, which he was entitled to do without violating Osment's Fourth Amendment rights.[5] Although Koehler asked officers to detain Osment for a pat-down, that seizure did not lead to the discovery of the blue bag and the associated marijuana, which was the subject of the motion to suppress. Rather, the search of the trailer was initiated after Wallace invited the police inside, at which point an officer saw a marijuana cigarette in plain view. "[A] police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point."[6] Once the contraband was seized, the police were entitled to detain Osment because they had probable cause to believe he had committed a crime.[7]

Both Wallace, the occupant of the trailer, and the trailer's owner consented to a search. "Generally, a search based on voluntary con-

---

[4] 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990).

[5] See *Gilreath v. State*, 247 Ga. 814, 819 (279 SE2d 650) (1981).

[6] (Citations omitted.) *State v. Zackery*, 193 Ga. App. 319 (387 SE2d 606) (1989). See also *Rowe v. State*, 184 Ga. App. 437 (1) (361 SE2d 705) (1987).

[7] *State v. Webb*, 193 Ga. App. 2, 4 (2) (386 SE2d 891) (1989).

sent eliminates the need for a search warrant or probable cause."[8] Osment contends, however, that the police, having found the blue bag under the bed, could not search the bag without Osment's consent or probable cause without violating his Fourth Amendment rights. At the time the police found and searched the bag, Osment argues, he had not been shown to have voluntarily discarded or abandoned the property. "Personal belongings brought by their owner on a visit to a friend's house retain their constitutional protection until their owner meaningfully abdicates control or responsibility."[9] The facts here distinguish *State v. Corley*[10] and *Browning*, on which Osment relies. In *Corley*, the police seized and searched a bag belonging to a passenger in a pickup truck. The bag was in the front seat, and "not found in any area normally used by the vehicle owner for storage."[11] In *Browning*, the police seized and searched the purse of an apartment visitor. The purse was found on the floor, and the defendant identified it as hers when the police showed it to her.[12] Here, however, when police asked Osment if he had been carrying a bag, Osment denied it. Osment also denied ownership of the bag after it was found. Police searched the trailer with permission of the owner and the occupant and found the bag stored under a bed, which is not where a casual visitor is likely to leave his belongings.[13] Osment argues that because the owner of the trailer denied that he owned the bag, and police were searching for Osment because he had been seen carrying a bag, all the officers present must have known that it belonged to Osment. Nevertheless, given that Osment told police he was not carrying a bag, that it was not his bag, and the bag was found stored under a bed in someone else's trailer, the trial court could conclude that Osment had no reasonable expectation of privacy in its contents. It follows that the trial court did not err in denying Osment's motion to suppress.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 17, 2002.

*John R. Greco*, for appellant.

---

[8] *Buckholts v. State*, 247 Ga. App. 697, 699 (2) (545 SE2d 99) (2001).

[9] *State v. Browning*, 209 Ga. App. 197, 198 (1) (433 SE2d 119) (1993).

[10] 201 Ga. App. 320 (411 SE2d 324) (1991).

[11] Id. at 322.

[12] *Browning*, 209 Ga. App. at 197 (1).

[13] See also *Minnesota v. Carter*, 525 U. S. 83, 90 (119 SC 469, 142 LE2d 373) (1998) ("an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not").

*Patrick H. Head, District Attorney, Andrew J. Saliba, Amy H. McChesney, Assistant District Attorneys*, for appellee.