## A03A0306. KEILHOLTZ v. THE STATE.
(581 SE2d 660)

RUFFIN, Presiding Judge.

Harry Robert Keilholtz was convicted of possessing methamphetamine with intent to distribute. He appeals, asserting that the trial court erred in denying his motion to suppress evidence. We affirm.

On appeal from the denial of a motion to suppress, we construe the evidence in a light most favorable to the trial court's ruling, and we will not reverse that ruling if any evidence supports it.[1] Viewed in this manner, the evidence shows that on January 5, 2001, the manager of a Howard Johnson's motel contacted Detective W. J. Presnell and reported "possible drug activity going on" in room 248. The manager further indicated that two females were staying in the room, which was registered to a male. According to Presnell, he spoke with this manager "on a regular basis" about "drug activity and any problems in the area."

Presnell, Officer K. O. Brooks, and Officer K. D. Krueger went to the motel to investigate. When they knocked on the door to room 248, a woman answered, invited them inside, and agreed to speak with them. Keilholtz, who was sitting at a table, was the only other person in the room. The officers explained why they were there and asked

[1] See *Bain v. State*, 258 Ga. App. 440, 441 (1) (574 SE2d 590) (2002); *Osment v. State*, 256 Ga. App. 591 (569 SE2d 262) (2002).

whether Keilholtz or the woman was involved in drug activity. They denied involvement. Neither Keilholtz nor the woman had any identification, but they provided the officers with their names.

According to Brooks, the woman was "extremely jittery, shaking, as if she was under the influence of some kind of drug." The woman asked if she could smoke a cigarette, and when she picked up the cigarette package, the officers noticed a rolled-up, cellophane bag between the cigarette box and the plastic wrap surrounding it. Krueger took the box and removed the bag, which contained a brown, powdery substance that field-tested positive for methamphetamine. At that point, the officers placed the woman under arrest. Brooks then asked Keilholtz and the woman about a set of car keys on the table in front of Keilholtz. Both denied any knowledge of the keys.

The officers escorted the woman out of the room and requested that Keilholtz accompany them. They told Keilholtz that he was not under arrest, but stated that they wanted to confirm his identity. The officers also frisked him for weapons. Keilholtz went outside with the officers, and Brooks took the car keys. As they moved toward the parking lot, Brooks saw a car parked directly below the room. He asked Keilholtz and the woman whether they owned or knew anything about the car. Both responded, "no." The officers ran the car's license tag through the police computer and discovered that the registration did not match the vehicle. Concerned that the car was stolen, Brooks tried the keys taken from the motel room, and one of them opened the car door.

Brooks began searching the car for information regarding its owner. Inside the center console, he found a wallet containing Keilholtz's driver's license. At that point, Officer Krueger, who was standing in the open car doorway, noticed a piece of plastic under the console. Krueger pulled on the plastic and discovered three ziplock bags filled with a "large amount" of a substance that field-tested positive for methamphetamine. The officers arrested Keilholtz, who acknowledged that he owned the car, but denied any involvement with the drugs.

Keilholtz moved to suppress the methamphetamine seized from his car. The State responded that, because Keilholtz abandoned the vehicle by disavowing ownership, he could not challenge the search.[2] The trial court denied Keilholtz's motion.

1. On appeal, Keilholtz argues that his denial of ownership was tainted and, therefore, provides no evidence that he abandoned the

---

[2] See *Walker v. State*, 228 Ga. App. 509, 510 (1) (493 SE2d 193) (1997) (Fourth Amendment protections do not apply to abandoned property).

car. To support this position, he cites *State v. Brown*,[3] in which we noted that

> denials of ownership may be considered as evidence of abandonment of a privacy interest only if they occur during a lawful detention. Any denials which occur during an illegal investigatory stop, or after a lawful detention becomes unlawful[,] . . . are tainted and cannot be considered.[4]

Claiming that the police seized him without reasonable, articulable suspicion, he asserts that *Brown* precludes any abandonment finding. We disagree.

Under Georgia law, "[a]t least three types of police-citizen encounters exist: verbal communications which involve no coercion or detention; brief 'stops' or 'seizures' which must be accompanied by a reasonable suspicion; and 'arrests' which can only be supported by probable cause."[5] Keilholtz contends that, when the officers first entered the motel room, he was "seized" under the Fourth Amendment because a reasonable person would not have believed that he was free to leave the room.

The record shows, however, that Keilholtz's companion invited the officers into the room and agreed to talk with them. Keilholtz and the woman then remained in the room and answered questions. According to Detective Presnell, the officers had a "normal conversation" with the room occupants about drug problems at the motel. This evidence supports the conclusion that Keilholtz was not detained or seized when the officers initially spoke with him. He was simply engaged in a "first tier" police-citizen encounter, during which officers may question an individual, ask to examine identification, and request consent to search, as long as they do not "convey a message that compliance with their requests is required."[6] The fact that Detective Presnell stood near the motel room's doorway during the encounter does not require a different result.[7]

---

[3] 201 Ga. App. 771 (412 SE2d 583) (1991).

[4] (Punctuation omitted.) Id. at 774 (3).

[5] *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999).

[6] (Punctuation omitted.) *Perez v. State*, 249 Ga. App. 399, 401 (1) (547 SE2d 699) (2001). See also *Florida v. Bostick*, 501 U. S. 429, 439 (111 SC 2382, 115 LE2d 389) (1991) (police questioning in the "cramped confines of a bus" does not result in a seizure per se; "to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter"); *Osment*, supra at 591-592 (officer can knock on door of residence without raising Fourth Amendment concerns); *Pickens v. State*, 225 Ga. App. 792, 793 (1) (a) (484 SE2d 731) (1997) (officer does not need articulable suspicion to knock on hotel room and ask occupant for identification).

[7] See *Bostick*, supra.

Eventually, this first-tier encounter escalated into an investigatory detention requiring reasonable, articulable suspicion. Certainly, the officers briefly seized Keilholtz when they frisked him.[8] During the first-tier communication, however, the police noticed that the woman appeared to be under the influence of drugs, and they discovered methamphetamine in her cigarette package. At that point, given the motel manager's report about drug activity in the room, the officers had a reasonable, articulable suspicion that Keilholtz was engaged in criminal activity, justifying the brief investigatory stop.[9]

Thus, Keilholtz's statements regarding the keys and the car occurred either before any detention or following a lawful detention. The statements are not tainted under *Brown* and may be considered as evidence of abandonment.[10]

2. As we have explained,

> [a]bandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.[11]

Keilholtz voluntarily and unequivocally disavowed ownership of the car without any compulsion from the police. The evidence thus shows that he relinquished his reasonable expectation of privacy in the car.[12] Accordingly, the trial court committed no error in finding the search constitutionally valid and denying Keilholtz's motion to suppress.[13]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

---

[8] See *State v. Taylor*, 226 Ga. App. 690, 691 (487 SE2d 454) (1997).

[9] See *Edwards v. State*, 253 Ga. App. 837, 838-839 (a) (560 SE2d 735) (2002).

[10] See *Brown*, supra.

[11] (Punctuation omitted.) *Young v. State*, 190 Ga. App. 775, 776 (380 SE2d 309) (1989).

[12] See id.

[13] See *Osment*, supra at 593; *Walker*, supra; *Ragin v. State*, 192 Ga. App. 686, 687 (2) (385 SE2d 770) (1989); *Young*, supra; *Deych v. State*, 188 Ga. App. 901, 902 (1) (374 SE2d 753) (1988).

DECIDED APRIL 16, 2003.

*Witcher & Witcher, Thomas M. Witcher, Michael R. Hauptman,* for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Candace K. Slezak, Assistant District Attorneys,* for appellee.