A05A1665. LOUGH v. THE STATE.
(623 SE2d 688)

JOHNSON, Presiding Judge.

A jury found Rodney Lough guilty of criminal attempt to manufacture methamphetamine, possession of altered ephedrine and pseudoephedrine, and possession of methamphetamine. Lough appeals from the trial court's denial of his motion to suppress. We find no error and affirm Lough's convictions.

In reviewing a trial court's ruling on a motion to suppress, we must construe the evidence most favorably to the upholding of the

---

[25] *McKay v. State,* 234 Ga. App. 556, 559 (2) (507 SE2d 484) (1998).
[26] *Wright v. State,* 277 Ga. 810, 811 (596 SE2d 587) (2004).
[27] See id.
[28] See id.
[29] Id.

trial court's findings and judgment.[1] The trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous, and the trial court's findings based on conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them.[2] So viewed, the evidence shows that prior to the incident involved in this appeal, a detective had contact with Lough regarding a domestic violence matter. During this prior investigation, Lough's children told the detective about witnessing Lough using needles with a white powder at the residence of Daniel and Kathy Combs. One child even described where the drugs were made at the Combs' residence. When officers went to investigate this information, they found a clandestine methamphetamine lab where the child said it would be. The officers also found a vehicle belonging to Lough at the Combs' residence. During the investigation, Lough admitted that he had a bad methamphetamine habit and wanted to quit. In addition, the detective received information from many people that Lough was involved with the clandestine manufacture of methamphetamine.

Subsequently, Kathy Combs contacted the detective and told the detective that she had witnessed Lough purchasing ephedrine pills from the Dollar General store. Later that same day, the detective saw Lough driving a car which she knew belonged to the passenger, Samantha Morgan. The detective called for backup and stopped the car. A deputy arrived, and both the detective and the deputy testified that they noticed a strong chemical smell which they associated with methamphetamine coming from the car. A drug dog alerted to both the driver and passenger door areas.

In the car, the investigator could see a Dollar General store bag. This bag contained a box of ephedrine pills (essential for the production of methamphetamine). The detective could also see matches (whose striker plates are used to produce the red phosphorous essential for the production of methamphetamine) and HEET (a fuel line de-icer essential in the production of methamphetamine). The detective questioned Morgan about the items in her car, and Morgan responded that they had just been to the Dollar General store and had purchased the HEET because they were having trouble with her car. Morgan consented to a search of her purse, where the detective found a cigarette pack containing more ephedrine pills. Morgan told the detective that Lough gave her the cigarette pack when they were about to be stopped and instructed her to put it in her purse. Based on her previous experience with Lough, along with her observations

---

[1] See *Wright v. State*, 272 Ga. App. 423, 424 (1) (612 SE2d 576) (2005).
[2] Id.

at the scene, the detective believed that Lough was under the influence of methamphetamine and arrested him.

Two deputies were sent to Morgan's parents' house (the "Conkle house"), where Morgan lived in a basement apartment with her two small children. The detective knew that Lough sometimes stayed at this house. The deputies obtained written consent from the Conkles to search their house. One deputy also testified that he believed he was present when Morgan gave the detective verbal permission to search her apartment.

During the course of the search, a backpack was located in the kitchen pantry area of Morgan's apartment. Mr. Conkle stated that he did not know who the backpack belonged to, and he gave the deputies permission to open it. Upon opening the backpack, deputies found what they believed were the components of a clandestine methamphetamine lab. At this point, another detective requested and received written consent from Morgan to further search her apartment, arrived at the Conkle house with special equipment to clean up the lab, and confirmed that the backpack did, in fact, contain a clandestine lab. The detective also found a black plastic case on top of Morgan's refrigerator that contained items commonly used to ingest and inject methamphetamine. Morgan admitted ownership of the black case with the drug paraphernalia, but stated that the backpack belonged to Lough.

At trial, Morgan testified that when they were stopped, she and Lough had just come from the Dollar General store, where Lough had purchased pseudoephedrine pills, HEET, and two books of matches to make methamphetamine. She admitted using the drug paraphernalia found in the black plastic case. She further testified that the methamphetamine found in the case belonged to her and Lough, and that the backpack found in her apartment belonged to Lough. Lough admitted he had a methamphetamine problem, admitted that he had used methamphetamine prior to the traffic stop, and admitted the methamphetamine found in the black plastic case was his. However, he denied any knowledge about the backpack, and he testified that the items found in the car were for legitimate purposes. Lough testified that Morgan was his girlfriend and he would stay at her apartment once or twice a week, but only brought a pair of pants with him.

Lough contends the trial court erred in allowing into evidence items found in the backpack because the traffic stop was not valid and the deputies did not have proper consent to search the backpack. We find no error.

1. Lough contends the traffic stop was improper because it was based on the statement of an informant of unknown reliability. This argument ignores the evidence in the case. The record shows that the

detective knew the informant, who had been involved with a previous methamphetamine investigation involving the informant's husband and Lough. Because the tip was from a known albeit untested person and not an anonymous tipster, it had more indicia of reliability than an anonymous tip.[3]

In addition, the detective knew from previous experience that Lough was addicted to methamphetamine, that others had implicated him in the clandestine manufacture of methamphetamine, and that pseudoephedrine was used in the manufacture of methamphetamine. The record further shows that the informant gave the detective specific facts which the investigator was able to confirm during the brief investigatory traffic stop.

An officer may stop a car to conduct a brief investigation if specific, articulable facts give rise to a reasonable suspicion of criminal conduct.[4] In determining whether the officer acted reasonably under the circumstances, due weight must be given to the specific reasonable inferences which the officer is entitled to draw from the facts in light of his experience.[5]

> An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.[6]

Contrary to Lough's argument, the detective did not stop the car Lough was driving on a mere "hunch," but did so based on a reasonable suspicion that Lough was engaged in criminal activity. The trial court did not err in determining that the report that Lough was purchasing ingredients for the manufacture of methamphetamine, coupled with the detective's previous experience with Lough, furnished her with articulable suspicion that Lough might be in the process of manufacturing methamphetamine and justified the warrantless investigatory stop of the vehicle Lough was driving.

2. Lough contends the trial court erred in denying his motion to suppress the contents of the backpack because the officers had no independent justification for searching the personal effects of a visitor.[7] However, the record shows that Lough has consistently

---

[3] See id. at 427 (2).

[4] Id. at 426 (2).

[5] Id.

[6] *State v. Misuraca*, 157 Ga. App. 361, 364 (276 SE2d 679) (1981).

[7] See *State v. Browning*, 209 Ga. App. 197, 198 (1) (433 SE2d 119) (1993).

maintained that the backpack does not belong to him. The fact that Lough denied any ownership interest in the backpack justified the trial court in concluding that Lough had no reasonable expectation of privacy in the backpack's contents.[8] Lough argues that the officers knew that the backpack belonged to him when they searched it. However, the record shows that the only evidence that Lough had any possessory interest in the backpack was provided by Morgan after the search was conducted. The trial court did not err in denying Lough's motion to suppress.

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED NOVEMBER 21, 2005.

*Brian M. House,* for appellant.
*Herbert E. Franklin, Jr., District Attorney, John L. O'Dell, Assistant District Attorney,* for appellee.

