A07A2394. SATTERFIELD v. THE STATE.
(658 SE2d 379)

SMITH, Presiding Judge.

William Satterfield appeals from his convictions of possessing methamphetamine, amphetamine, cocaine, and marijuana in his bodily fluids. In his only enumeration of error, Satterfield asserts the trial court erred by denying his motion to suppress. For the reasons set forth below, we affirm.

So viewed, the record shows that while conducting surveillance of suspected drug activity at a residence, police observed Satterfield and a woman enter the residence for approximately five minutes and drive away. An officer conducting surveillance recognized the passenger as a known drug seller and asked a police officer in a marked car to stop Satterfield and determine his identity. When Satterfield turned into the driveway of his passenger's residence, the officer pulled in behind Satterfield's car and activated his blue lights. The record also indicates that Satterfield stopped his car at the same

---

[7] *Loden v. State*, 271 Ga. App. 632, 633 (610 SE2d 593) (2005) (footnote omitted).
[8] *Keenan v. State*, 263 Ga. 569, 571-572 (2) (436 SE2d 475) (1993).

moment the officer activated his blue lights. The officer testified that at this point, Satterfield and his passenger were not free to leave.

The officer stepped out of his car and asked Satterfield and his passenger to get out of Satterfield's car. At this point, the officer requesting the stop arrived and saw suspected methamphetamine near the front passenger seat in plain view. When neither Satterfield nor his passenger admitted ownership of the contraband, the officers arrested them both. After learning that Satterfield was on probation for a previous conviction, the police tested his urine pursuant to the conditions of his probation, and these tests revealed the presence of methamphetamine, amphetamine, cocaine, and marijuana.

The officer conducting surveillance admitted that he saw no wrongdoing by Satterfield or his passenger, "just suspicious activity going on" at the residence under surveillance. Specifically, he saw "numerous people going in and out of the residence, spending just minutes inside the residence. Maybe going in for a minute or two and then coming back out. Vehicles coming and going and so forth." The police conducted surveillance of the residence because they had received information that "there was some drug activity going on" there and a "resident of that location was known to the drug unit as being a violator of controlled substances in the past." An officer testified that the behavior observed at the residence under surveillance was consistent with the report they had received about drug activity.

At the conclusion of the motion to suppress hearing, the trial court took the issue under advisement, noting

> it's a fairly close call. I think one of the primary issues is going to be the officer's personal knowledge of [the passenger]. Knowing that she is a drug user and observing her in a suspect location, those two facts may well be sufficient to give rise to articulable suspicion justifying a stop. Had it not been for his knowledge . . . , I don't think it would be a close call. I don't think you can just stop every vehicle coming out of a known drug location, if you don't observe some particular violation yourself.

In its written order, the trial court found that the officer "executed a stop simultaneously with the suspect's vehicle pulling into a private drive." The trial court then concluded that, based on the officer's surveillance of the house and personal knowledge of the passenger's participation in illegal drug activity, the officer had sufficient articulable suspicion to stop Satterfield.

1. On appeal, Satterfield asserts that there was no articulable suspicion justifying the stop. The State responds that this was a

first-tier police-citizen encounter requiring no articulable suspicion and, in the alternative, that articulable suspicion existed if it was a second-tier encounter.

"There are at least three tiers of police-citizen encounters: (1) consensual encounters; (2) brief investigatory stops that require reasonable suspicion; and (3) arrests that must be supported by probable cause." (Citation and footnote omitted.) *O'Neal v. State*, 273 Ga. App. 688, 690 (616 SE2d 479) (2005).

> In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave.

(Citations and punctuation omitted.) *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997).

In this case, the trial court found that the patrol officer "executed a stop simultaneously with the suspect's vehicle pulling into a private drive." Because this finding is supported by the evidence and not clearly erroneous, the State's argument that this was a first-tier encounter because Satterfield had "already stopped" is without merit. Appellate courts will not reverse a trial court's factual findings "[i]n the absence of evidence of a record *demanding* a finding contrary to the judge's determination." (Citation, punctuation and footnote omitted.) *State v. Winnie*, 242 Ga. App. 228, 230-231 (529 SE2d 215) (2000).

The State argues, in the alternative, that even if Satterfield stopped at the same time the officer pulled behind him, it was still a first-tier encounter. We disagree. The patrol officer activated his blue lights when he pulled behind Satterfield and asked both occupants to step out of the car. The officer also testified that the occupants were not free to leave. We have previously found that similar conduct elevates a police-citizen encounter to the second tier. *O'Neal*, supra, 273 Ga. App. at 690 (police officer pulled next to parked van and activated blue lights); *McKinley v. State*, 213 Ga. App. 738, 739 (445 SE2d 828) (1994) (police officer pulled behind parked car, activated blue lights, and told driver to step back in his car). Compare *McClain*, supra, 226 Ga. App. at 716 (finding first-tier encounter when police officer did not activate blue lights before approaching stopped vehicle and asking driver for identification).

2. Having concluded that this was a second-tier encounter, we must now determine whether the patrol officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Citation and punctuation omitted.) *Hughes v.*

*State*, 269 Ga. 258, 260 (1) (497 SE2d 790) (1998). In this case, the patrol officer stopped Satterfield based on the radio request of another officer. The collective knowledge of the police may be used to justify a stop if an officer in communication with the stopping officer "observed either facts raising a reasonable suspicion of criminal activity or a traffic violation." (Citations omitted.) *Hennings v. State*, 236 Ga. App. 473, 474 (1) (512 SE2d 357) (1999). In this case, all of the following facts, taken together, justified the patrol officer's stop of Satterfield: (1) Satterfield spent five minutes in a residence of a known drug offender that was under surveillance for drug activity; (2) police officers observed suspected drug activity at this residence; (3) Satterfield drove away from the residence under surveillance with a passenger who was a known drug offender; and (4) Satterfield drove to his passenger's residence. See *Edwards v. State*, 253 Ga. App. 837, 839 (a) (560 SE2d 735) (2002); *Lewis v. State*, 233 Ga. App. 560, 561 (1) (504 SE2d 732) (1998). As a result, the trial court properly denied Satterfield's motion to suppress.

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED FEBRUARY 13, 2008 —
RECONSIDERATION DENIED MARCH 4, 2008.

*Christopher G. Paul*, for appellant.
*T. Joseph Campbell, District Attorney, Sharon M. Fox, Assistant District Attorney*, for appellee.