## A09A1328. GARZA v. THE STATE.

(680 SE2d 175)

BLACKBURN, Presiding Judge.

Following a stipulated bench trial, Jaime Garza was convicted of a single count each of trafficking in methamphetamine[1] and possession of marijuana with intent to distribute.[2] Garza now appeals from the trial court's denial of his motion to suppress evidence seized by police during a consensual search of his vehicle, arguing that the search resulted from an illegal traffic stop. Discerning no error, we affirm.

> In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous. Moreover, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial.

(Punctuation omitted.) *Lindsey v. State*.[3]

So viewed, the evidence shows on June 9, 2004, during the course of an undercover investigation, Detective Ubaldo Rios had a confidential informant (the "CI") negotiate the purchase of a large quantity of cocaine and methamphetamine from a suspected drug dealer, later identified as Ricardo Escobar. The drug transaction was eventually scheduled for the next day, with Escobar agreeing to deliver the drugs to the CI's apartment complex in Gwinnett County. To avoid unduly jeopardizing the CI's safety, the detective instructed the CI that, once he had seen the drugs, he should refuse to go through with the transaction and then contact the detective, who would arrange for a traffic stop of Escobar.

Late on the morning of June 10, 2004, the detective and other law enforcement agents observed Escobar drive his vehicle into the parking lot at the CI's apartment complex. Escobar exited his car carrying what appeared to be a white paper bag and met the CI in the parking lot. Escobar showed the CI the contents of the white bag and after the CI communicated to the detective that he had seen the drugs, he cancelled the transaction.

---

[1] OCGA § 16-13-31 (e).

[2] OCGA § 16-13-30 (j) (1).

[3] *Lindsey v. State*, 287 Ga. App. 412, 412 (651 SE2d 531) (2007).

After the CI left him, Escobar remained in his parked car for approximately ten minutes and, during that time, agents saw Garza enter the parking lot of the apartment complex driving a brightly-decorated panel van, advertising ice cream for sale. Garza drove his van to the back of the parking lot, and Escobar then moved his car and parked near Garza. Both Escobar and Garza exited their vehicles and spoke to one another. At least two agents observed Escobar retrieve a package or bag from his car and hand it to Garza. Garza took the item and went into the ice cream van. After several minutes, Garza reappeared and spoke briefly with Escobar before both men returned to their vehicles and drove away.

A short time later, Escobar was stopped for failure to maintain lane by a uniformed patrolman, who had begun following Escobar after he left the apartment complex. During a subsequent, consensual search of Escobar's vehicle, the patrolman found no drugs. The patrolman communicated this information to the detective, who had followed Garza's ice cream truck when it left the CI's apartment complex.

Once the detective learned that Escobar did not have the drugs, he initiated a traffic stop of Garza, based upon his suspicion that Garza had possession of the contraband. The detective identified himself as a police officer, explained that he was conducting a drug investigation, and asked for and received Garza's permission to search his vehicle. That search revealed approximately 236 grams of marijuana located in the front of the van. The detective then read Garza his *Miranda* rights and questioned him specifically about his possession of the crystal methamphetamine. After Garza told them where to look, officers located two large packages of crystal methamphetamine, with a total weight of 896 grams, in one of the van's freezers, hidden underneath the ice cream contained therein.

Both Garza and Escobar were arrested and were subsequently charged with trafficking in methamphetamine, and Garza was also charged with possession of marijuana with intent to distribute. After the trial court denied his motion to suppress the evidence seized pursuant to the police stop of his vehicle, Garza waived his right to a jury trial and was convicted following a stipulated bench trial. The trial court thereafter denied Garza's motion for a new trial, and this appeal followed.

Garza's sole claim of error is that the trial court erred in denying his motion to suppress because the police stop of his vehicle was illegal. We disagree.

An officer may make a brief, investigatory stop of a vehicle when he has a reasonable, articulable suspicion that the person stopped has been, or is about to be, engaged in criminal activity. *Garmon v.*

*State*.[4] Such a suspicion must be based on specific facts and the reasonable inferences that can be drawn from those facts. *Attaway v. State*.[5] "What is necessary is a founded suspicion, some basis from which the court can determine that the detention was not arbitrary or harassing." (Punctuation omitted.) *Edwards v. State*.[6]

The facts here show that Escobar had possession of a significant amount of crystal methamphetamine, which he attempted to sell to the CI. When that transaction failed, Escobar waited in the parking lot until Garza arrived. He then met with Garza and gave him a package. Garza, in turn, took the package into his van and re-emerged without the same. From the time he entered the parking lot at the CI's apartment complex until he was stopped by police, Escobar was never out of the sight of law enforcement agents, and the only person with whom he had physical contact was Garza. The consensual search of Escobar's car following his traffic stop, however, revealed that he no longer had the drugs in his possession. These facts supported the inference that Escobar had given the drugs to Garza and therefore gave rise to a reasonable suspicion on the part of police that Garza was in possession of the methamphetamine. See *Garmon*, supra, 271 Ga. at 678 (2); *Edwards*, supra, 253 Ga. App. at 839 (a); *Lewis v. State*.[7]

Because "[t]he investigatory . . . stop of [Garza] . . . was based on a reasonable, articulable suspicion of criminal activity and was not arbitrary or harassing," the trial court did not err in denying Garza's motion to suppress. *Lewis*, supra, 233 Ga. App. at 561 (1) (e).

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED JUNE 12, 2009.

*Sliz, McKinney & Drake, Scott A. Drake*, for appellant.
*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney*, for appellee.

---

[4] *Garmon v. State*, 271 Ga. 673, 676 (2) (524 SE2d 211) (1999).
[5] *Attaway v. State*, 236 Ga. App. 307, 308 (511 SE2d 635) (1999).
[6] *Edwards v. State*, 253 Ga. App. 837, 838 (560 SE2d 735) (2002).
[7] *Lewis v. State*, 233 Ga. App. 560, 561 (1) (e) (504 SE2d 732) (1998).