**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 18, 2012**

# In the Court of Appeals of Georgia

A12A1592. STINSON v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial in the Clayton County State Court, Nathaniel Stinson was convicted of driving with an alcohol concentration exceeding 0.08 grams ("DUI per se"- OCGA § 40-6-391 (a) (5)).[1] On appeal, Stinson contends that the trial court erred

---

[1] Stinson also was charged with improper turning without signaling (OCGA § 40-6-123 (b)) and driving under the influence of alcohol to the extent that he was a less safe driver ("DUI less safe"- OCGA § 40-6-391 (a) (1)). The trial court granted a directed verdict on the improper turning charge and merged the DUI less safe charge into the DUI per se charge. Accordingly, Stinson was not convicted of the improper turning and DUI less safe offenses. See *Slack v. State*, 288 Ga. 659, 661 (2) (706 SE2d 447) (2011) (ruling that a conviction does not occur until a final judgment of conviction is entered upon a guilty verdict); *Wallin v. State*, 270 Ga. 889, 890 (514 SE2d 828) (1999) (a defendant is not convicted of a merged offense).

in denying his motion in limine[2] and objection to exclude the results of the breath test and the field sobriety examination, along with his admissions to the police officers, since they were the fruits of an unlawful stop.[3] For the reasons that follow, we affirm the judgment. We nevertheless remand the case to the trial court with instructions to correct the blatant errors in its written sentencing form.

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to

---

[2] The trial court's ruling on Stinson's motion in limine has not been included in the appellate record. Nevertheless, since it is undisputed that the trial court denied the motion, and the trial court subsequently overruled Stinson's objection to the breath test at trial, we shall review Stinson's claim of error.

[3] Stinson also enumerates that the trial court erred in failing to give his requested jury charge on the use of a turn signal and in admitting the officer's testimony regarding the depressant effects of alcohol on the central nervous system. His arguments, however, pertain to the improper turning and DUI less safe offenses for which he was not convicted. Consequently, these enumerations are moot and need not be addressed. See *Fleming v. State*, 269 Ga. 245, 247 (3) (497 SE2d 211) (1998) (concluding that the appellant's enumerations are moot since they pertained to an offense for which he was not convicted); *Farley v. State*, 314 Ga. App. 660, 664 (1) (b), n. 11 (725 SE2d 794) (2012) (we need not address an appellant's challenge concerning a merged offense for which he was never convicted and sentenced).

a jury verdict and will not be disturbed if there is any evidence to support them.

(Citation and footnote omitted.) *Jones v. State*, 259 Ga. App. 506 (1) (2003).

So viewed, the evidence shows that on May 14, 2011, at approximately 1:47 a.m., officers with the Jonesboro Police Department and the Clayton County Police Department were conducting a multi-jurisdictional roadblock at an intersection on Lake Jodeco Road in Clayton County. The officers observed a white pickup truck, driven by Stinson, approaching the roadblock. The officers described that Stinson's truck crested to the top of the hill where the roadblock became visible, then "stop[ped] very suddenly and made a very sharp right turn" onto an adjacent road. A police radio alert was sent out with the description of Stinson's truck, and an officer left the roadblock to locate Stinson's truck. Shortly thereafter, an officer found Stinson's truck parked on the shoulder of the road, and Stinson had already exited the truck. Stinson was staggering outside of his truck, and stumbled into the truck's rear fender. The officer made contact with Stinson, directed Stinson to step back inside his truck, and began running checks of the truck's tag and Stinson's driver's license. Based on the home address listed on Stinson's driver's license, Stinson would have had to pass through the roadblock in order to take a direct route to his home.

3

Other officers arrived at the scene to provide back up assistance. During the encounter, the officers smelled the odor of alcohol emanating from Stinson's person, and Stinson looked confused. An officer further observed that Stinson's speech was very slurred and his eyes were bloodshot. Stinson admitted that he had consumed two beers earlier that evening.

Stinson agreed to perform field sobriety tests at the scene. The officer who administered the tests observed that Stinson displayed signs of impairment during the horizontal gaze nystagmus test. During the walk and turn test, the officer again observed several signs of Stinson's impairment. Stinson also registered a positive alcosensor test result, revealing the presence of alcohol on Stinson's breath. Based on the officer's observations, Stinson was arrested for DUI.

Following his arrest, Stinson was read the required implied consent notice, advising him of the State-administered chemical test and his right to an independent test. Stinson agreed to submit to the State's chemical test of his breath using the Intoxilyzer 5000 device. The test results indicated that Stinson had .120 and .122 alcohol concentration levels.

Stinson was charged and convicted of DUI per se.

1. Stinson contends that the trial court erred in denying his motion in limine and objection to exclude evidence of the breath test results, field sobriety examination results, and his admissions to the officers. He argues that the test results and his admission to the officers that he had consumed alcohol were inadmissible since they were the product of an unlawful stop. We disagree.

"There are at least three tiers of police-citizen encounters: (1) consensual encounters; (2) brief investigatory stops that require reasonable suspicion; and (3) arrests that must be supported by probable cause." (Citation and footnote omitted.) *O'Neal v. State*, 273 Ga. App. 688, 690 (616 SE2d 479) (2005).

> A person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. . . . In order to determine whether a particular encounter constitutes a seizure [under a second tier encounter], a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter.

(Citations and punctuation omitted.) *Rogers v. State*, 206 Ga. App. 654, 657 (2) (426 SE2d 209) (1992). Here, the evidence indicated that Stinson's encounter with the

officers was of the second-tier requiring reasonable suspicion for the seizure. The circumstances surrounding the encounter in this case demonstrated that Stinson was being detained and was not free to leave the scene.[4] Significantly, the evidence showed that the officers had pursued Stinson's truck after it turned to evade the roadblock, the officers had activated their blue lights upon pulling behind Stinson's parked truck, and an officer had directed Stinson to step back into his truck after the officer's approach. These combined circumstances indicated that a seizure was intended. See *Satterfield v. State*, 289 Ga. App. 886, 888 (1) (658 SE2d 379) (2008) (concluding that a second-tier encounter occurred when the officer activated his blue lights upon pulling behind the defendant's car and asked the occupant to step out of the car); *McKinley v. State*, 213 Ga. App. 738, 739 (445 SE2d 828) (1994) (concluding that a second-tier encounter occurred when the officer pulled behind the

---

[4] We note that Stinson's vehicle was already parked on the shoulder of the road when the officer initially approached Stinson. Generally, "an officer's approach to a stopped vehicle and inquiry into the situation are not a 'stop' or 'seizure' but rather clearly fall within the realm of the first type of police-citizen encounter." (Citations and punctuation omitted.) *Carrera v. State*, 261 Ga. App. 832, 834 (584 SE2d 2) (2003); see also *Palmer v. State*, 257 Ga. App. 650, 651-652 (1) (572 SE2d 27) (2002). Nevertheless, as explained above, this is not a situation involving a voluntary stop since there were other circumstances establishing that Stinson was being pursued and detained during the police encounter.

6

defendant's parked car, activated the patrol car's blue lights, and told driver to step back in his car).

To justify Stinson's seizure under this second-tier encounter, the State was required to show that the officers had a particularized and objective basis for suspecting that Stinson was involved in criminal activity. See *Satterfield*, supra, 289 Ga. App. at 888 (2).

> An officer may conduct a brief investigative stop of a vehicle if the stop is justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. A court must consider whether, under the totality of the circumstances, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . [A]n officer's honest belief that a traffic violation has been committed in his presence, even if ultimately proven incorrect, may nevertheless demonstrate the existence of at least an articulable suspicion and reasonable grounds for the stop. In judging the officer's honest belief, a court should determine whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing. And, while normal driving that incidentally evades a roadblock does not justify an investigative stop, abnormal or unusual actions taken to avoid a roadblock may give an officer a reasonable suspicion of criminal activity even when the evasive action is not illegal.

(Citations, punctuation, and footnotes omitted.) *Jones*, supra, 259 Ga. App. at 507 (1).

Stinson argues that the traffic stop was unjustified since there was no evidence that he had committed a traffic offense. His argument is without merit. Here, the evidence showed that Stinson made an abrupt, furtive turning maneuver in his vehicle to evade the roadblock. Regardless of whether Stinson's abrupt maneuver turned out to be a traffic violation, "it was nevertheless a sufficiently suspicious and deliberately furtive response to the road check so as to give the officer at least a reasonable suspicion of [Stinson's] criminal activity and to warrant further investigation." (Citation and punctuation omitted.) *Jones*, supra, 259 Ga. App. at 507-508 (1). Cf. *Jones v. State*, 291 Ga. 35, 38-39 (2) (727 SE2d 456) (2012) (concluding that the traffic stop was unlawful since there was no evidence of an abrupt turn, sharp driving maneuver, or other evasive action to justify the officer's belief that the defendant was trying to avoid the roadblock). Since the stop and seizure were lawful, Stinson's motion in limine and objection were properly denied.

2. Although the issue was not enumerated as error, we note that the trial court's written sentence form erroneously reflects that Stinson had "pled guilty" to the DUI per se offense and that Stinson was "found not guilty [by the] jury" of the improper turning offense. To the contrary, Stinson was convicted of the DUI per se offense

8

following a jury trial, and a directed verdict was granted on the improper turning charge. The accuracy of information in court records is extremely important, and therefore, the trial court is directed to correct the aforementioned mistakes in its sentencing form upon remittitur. See *Johnson v. Gooding*, 242 Ga. 793, 794-795 (251 SE2d 534) (1979) (the trial court has the inherent power to correct clerical errors in its written sentencing record to reflect the truth of what transpired during its proceedings).

*Judgment affirmed; case remanded with instruction. Ray and Branch, JJ., concur.*

9