### A08A1223. THE STATE v. HOPPER.
#### (666 SE2d 735)

MILLER, Judge.

The State appeals from the trial court's grant of Keith Hopper's motion to suppress evidence seized by police following a traffic stop. We affirm because officers did not have a particularized and objective basis to suspect Hopper of wrongdoing.

"On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." (Citation, punctuation and footnote omitted.) *State v. Mallard*, 246 Ga. App. 357 (541 SE2d 46) (2000). However, "[w]here the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo review." (Citation and footnote omitted.) Id.

So viewed, the evidence shows that a confidential informant told a Macon Police Department officer that contraband was being sold from a house located at 4089 St. Charles Place in Macon. The officer confirmed the information by conducting a "controlled buy" through an informant. The informant was searched to ensure that she was not in possession of contraband, entered the house, and returned with hydrocodone pills. Police set up a surveillance operation both before and on April 17, 2007, during which the officer witnessed vehicles arrive at the house, stay a couple of minutes, and then leave. According to the officer's testimony, this indicated illegal drug activity.

On the afternoon of April 17, 2007, two officers, with the aid of binoculars and the telephoto lens of a video camera, watched the house from a McDonald's restaurant approximately 200 feet away. An officer witnessed "[t]he same pattern of vehicles pulling up, parking, going in the house, and coming back out." Eventually, a van arrived. The driver went into the house, stayed for a few minutes, and then came back out. After the driver came back outside he met with someone at the back of the van, and "there was an interaction of some kind, talking." On cross-examination, the officer confirmed that she did not see any money or bag exchange hands, and that the person the driver was talking to had not come out of the house.

The lead officer conducting the surveillance believed that the driver had just purchased drugs, and so she radioed a nearby officer and instructed him to stop the van. She came to this decision "[d]ue to [her] experience, knowledge, and training — the pattern that he pulled in, went into the house and [came] back out and left in a few minutes — that he had purchased drugs." Based on these instructions and a description of the vehicle, an officer stopped the van. The purpose of the stop was to "check for drugs," and the officer did not see any traffic violation.

The officer told Hopper, who was driving the van, that police were doing an investigation in the area and that he had been seen coming from a house that was known to sell drugs, and he asked Hopper if he had any drugs or weapons. Hopper responded, "No; you can check the van." Hopper then consented to a search of his person. Inside Hopper's right pocket, the officer found numerous pills.[1]

Hopper was subsequently accused of possession of carisoprodol. Following a hearing, the trial court granted Hopper's motion to suppress the evidence discovered as a result of the stop of the van and the subsequent search. On appeal, the State claims that the trial court applied the wrong test in determining the validity of the traffic stop, and that the police had a particularized and objective basis for suspecting that Hopper was engaging in criminal activity.[2] We disagree.

---

[1] The only evidence conflicting with police testimony was raised by two defense witnesses. One witness testified that Hopper and Robert Davis were living at a house on St. Charles Place, and that on the day in question Hopper stopped the van at that house, but no one ever got out of the van. Davis testified that he was living at 4055 St. Charles Place with Hopper, and that when they stopped at his house, a person named Hill, not Hopper, got out of the van and went next door to collect some money. The trial court ruled that he was "reluctant to believe" the testimony of the defense witnesses because police would have recognized the van as having been there before if it had actually been going to 4055 St. Charles Place.

[2] The State's argument that police received valid consent to search Hopper's person is mooted by our determination that the traffic stop was invalid.

Police were authorized under the Fourth Amendment to conduct a second-tier investigatory stop of Hopper's van "if based on the totality of the circumstances they had specific and articulable facts which, taken together with rational inferences from those facts, gave them a particularized and objective basis for suspecting [Hopper] of criminal activity." (Citations and punctuation omitted.) *State v. Flores*, 262 Ga. App. 389, 390 (585 SE2d 714) (2003). As our Supreme Court has explained, "[t]hat is, under the totality of the circumstances, the investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Garmon v. State*, 271 Ga. 673, 676 (2) (524 SE2d 211) (1999). Given that in delivering its ruling the trial court essentially restated the foregoing language, we cannot conclude, as argued by the State, that the trial court applied the wrong legal standard in reaching its decision.

Nor can we conclude that the trial court erred in finding that the police did not have sufficient grounds to detain Hopper. According to the officer who ordered that Hopper be stopped, it was "the pattern that he pulled in, went into the house and [came] back out and left in a few minutes," combined with what she had learned from her investigation into the house, that caused her to believe he was engaging in criminal activity. However, the officer saw nothing about Hopper that raised a particularized suspicion of wrongdoing. Hopper was not known to be otherwise connected to the house or named by an informant; he did not act erratically or try to avoid the police; nor did he engage in any sort of transaction viewed by the police. Rather, all police knew about Hopper was that he went into a suspected drug house in the middle of the afternoon, stayed for a few minutes, and then he left and drove away. See *Mallard*, supra, 246 Ga. App. at 364-365 (police had no specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct by defendants who drove away from a house shortly before execution of a warrant for suspected contraband at the residence). Compare *Satterfield v. State*, 289 Ga. App. 886, 889 (2) (658 SE2d 379) (2008) (second-tier stop authorized where defendant drove away from house suspected of drug activity and then drove to the residence of his passenger, who was a known drug offender).

A person's mere presence in a high crime area does not give rise to reasonable suspicion of criminal activity, even if police observe conduct which they believe consistent with a general pattern of such activity. See *Hughes v. State*, 269 Ga. 258, 260-261 (1) (497 SE2d 790) (1998) (police stop illegal even though defendant's conduct fit " 'pattern' that whites came to that neighborhood looking for drugs or prostitutes and the 'pattern' of drug transactions made or arranged in vehicles, with the seller being picked up and then

returned to his street-side location"); *Lyttle v. State*, 279 Ga. App. 659, 661 (632 SE2d 394) (2006) (act of driving at night in high crime area, without more, not sufficient to give rise to reasonable suspicion of wrongdoing). Here, police inferred that, because Hopper fit a "pattern" of behavior by staying in a suspected drug house for a short period of time, he was likely to have bought drugs inside. Thus, it was Hopper's conformity to a general pattern of behavior, and not a particularized suspicion, that led to the stop. Accordingly, the stop failed to meet the requirements of the Fourth Amendment. See *Hughes*, supra, 269 Ga. at 259-260 (1) (the "demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence") (citations and punctuation omitted). In contrast, the cases relied on by the State's brief do nothing to dispute this conclusion, as they involve officers observing activity giving rise to a particularized basis for their suspicion of wrongdoing. See *Edwards v. State*, 253 Ga. App. 837, 839 (a) (560 SE2d 735) (2002) (defendant and his companion went directly to motel room where police had information that drug sales were occurring — then made an "otherwise inexplicable and 'abrupt' departure from the door of that room upon seeing Officer Jimenez — a location at which they had only just arrived"); *Lewis v. State*, 233 Ga. App. 560, 561 (1) (504 SE2d 732) (1998) (after leaving site of abandoned, unlit development known for drug trafficking, defendant began driving his car in "erratic" manner in attempts to avoid the police); *Hayes v. State*, 202 Ga. App. 204, 204-205 (414 SE2d 321) (1991) (defendant stopped his vehicle in front of a house where the execution of a search warrant for drugs was imminent, and prior to the traffic stop the officer had observed defendant opening the console of his vehicle). Although the police might have been justified in observing Hopper and his van more closely, officers lacked sufficient information to infer that Hopper, in particular, was engaged in illegal activity so as to provide a reasonable, articulable suspicion to justify a second-tier detention. It follows that the trial court did not err in granting Hopper's motion to suppress.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED AUGUST 4, 2008.

*Howard Z. Simms, District Attorney, Kimberly S. Schwartz, Assistant District Attorney*, for appellant.

*Kristen C. Quinton*, for appellee.