## S13A0369. HOLMES v. THE STATE.
(744 SE2d 701)

HINES, Justice.

Derrick Paul Holmes appeals his convictions and sentences for the malice murder of Nakisha Rawls, possession of a firearm during the commission of a felony, and violating the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Rawls and Holmes knew each other for more than seven years. Rawls was a prostitute, and Holmes was her pimp; Holmes had other prostitutes working for him as well, all of whom he kept under control by threats and violence. For several months before her death, Rawls spoke of leaving prostitution, and she twice left Holmes; she left a third time, was living with her mother, and feared that Holmes would harm her.

Two days before Rawls was killed, Emma Grant, a prostitute who worked for Holmes, helped him follow Rawls's mother from her place of work to the apartment complex in which she lived. Holmes told Grant to rent a vehicle with tinted windows; the next day, Grant's mother rented a white SUV with tinted windows, which Grant turned over to Holmes.

In the hours before Rawls was killed, a white SUV was seen repeatedly driving in the parking lot of the apartment complex where Rawls and her mother were living; a resident became suspicious and recorded the license number of the SUV. While the SUV was in the parking lot, Rawls exited the apartment building and got into a black Cadillac near the SUV; two men carrying firearms emerged from the SUV and shot into the Cadillac. Rawls was struck by eleven bullets, primarily in the head and torso, and died of multiple gunshot wounds. A law enforcement officer who responded to the crime scene received

---

[1] Rawls was killed on August 30, 2008. On May 17, 2011, a DeKalb County grand jury indicted Holmes and Emma Hope Grant for malice murder, felony murder while in the commission of aggravated assault, aggravated assault, possession of a firearm during the commission of a felony, and violating the RICO Act. Holmes was tried alone before a jury October 3-7, 2011, and found guilty of all charges. On October 18, 2011, Holmes was sentenced to life in prison for malice murder, twenty years in prison for violating the RICO Act, and five years in prison for possession of a firearm during the commission of a felony, all to be served consecutively; the remaining guilty verdicts were either vacated by operation of law or merged with crimes for which sentence was entered. See Malcolm v. State, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Holmes moved for a new trial on November 11, 2011, and amended the motion on July 13, 2012; the motion, as amended, was denied on August 30, 2012. On October 1, 2012, Holmes filed a notice of appeal; the appeal was docketed in this Court for the January 2013 term and submitted for decision on the briefs.

the license number of the SUV from the resident who had noted it; Holmes's fingerprints were found on the SUV's rental agreement.

Telephone calls from Holmes's cell phone in the minutes before Rawls was killed originated from the area of a cell tower close to the scene of the shooting. Holmes and Andre Smith were arrested after a road rage incident in November 2008; a pistol recovered at that time proved to have been used in the shooting of Rawls.

1. The evidence authorized the jury to find Holmes guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Evidence that Holmes violated the RICO Act included certain items that were the product of a vehicle search that occurred more than two years before Rawls was killed. During the incident that brought about the search, Holmes, while in an area known for prostitute activity in College Park, was seated behind the wheel of the Cadillac that later proved to be the vehicle in which Rawls was killed; he was approached by a city police officer and gave consent to search the vehicle; and the search yielded the items that were introduced at trial. Holmes contends that the fruits of the search should have been suppressed because he was stopped by the officer on suspicion of violating a city ordinance, and the State did not allege and prove the ordinance at issue. See *Lucas v. State*, 284 Ga. App. 450, 451 (644 SE2d 302) (2007); see also *Childers v. Richmond County*, 266 Ga. 276, 277 (467 SE2d 176) (1996). However, his argument is misplaced. Although the officer stated his belief that Holmes, Grant, and another person in the vehicle were violating a city ordinance he called "loitering for illegal sexual purposes," the officer's testimony was clear that he was engaged in an operation designed to suppress prostitution, and had determined that the activity he observed led him to believe the persons were engaged in a "prostitution deal." Furthermore, during the hearing on the motion to suppress, the State argued that the officer had reasonable suspicion that the persons observed were engaged in prostitution. Prostitution is a crime in Georgia, see OCGA § 16-6-9, and it was the crime that the District Attorney resolved to pursue based upon the incident; no local ordinance needed to be proved to establish that the officer had a reasonable suspicion to stop the vehicle Holmes was driving. Rather, the question presented to the trial court was whether the investigative stop was proper in that it was

> justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. . . . This specific, articulable suspicion must be based on the totality of the circumstances — e.g., objective observations,

information from police reports, the modes or patterns of certain kinds of lawbreakers, and the inferences drawn and deductions made by a trained law enforcement officer.

*Ciak v. State*, 278 Ga. 27, 30 (3) (597 SE2d 392) (2004). See also *Burgeson v. State*, 267 Ga. 102, 105 (3) (a) (475 SE2d 580) (1996). And, using this standard, the trial court found that there was articulable suspicion that the occupants of the car were engaged in criminal activity.

Moreover, the trial court also noted that the police officer was authorized to approach the parked Cadillac, ask questions of the occupants, and even ask for consent to search the vehicle, without a requirement that the officer have articulable suspicion. See *In the Interest of D. H.*, 285 Ga. 51, 53 (2) (673 SE2d 191) (2009); *Baker v. State*, 300 Ga. App. 307, 309 (684 SE2d 427) (2009). The presence of a marked police car at the scene of the questioning, along with the unmarked car driven by the first officer, does not, under the totality of the circumstances, require a finding that the occupants of the Cadillac did not believe that they were free to leave when the officer asked for consent to search the Cadillac. See *State v. Cauley*, 282 Ga. App. 191, 197-198 (2) (638 SE2d 351) (2006). Accordingly, we cannot conclude that the trial court erred in denying the motion to suppress. See *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011); *Cauley*, supra.

3. Holmes contends that his trial counsel failed to provide effective representation, and that his motion for new trial on that ground should have been granted. In order to prevail on this claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's deci- sions were "made in the exercise of reasonable professional judg- ment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " '[W]e accept the trial court's factual findings and credibility determinations unless clearly erro- neous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Count 1 of the indictment charged Holmes with violating the RICO Act through a pattern of criminal activity in furtherance of his pimping enterprise. Holmes urges that counsel should have moved to redact from that portion of the indictment certain acts alleged that could not be reasonably construed as overt acts in furtherance of such a conspiracy, but that nonetheless would be prejudicial in the eyes of the jury.[2] But, even assuming that there were extraneous assertions in Count 1 of the indictment that would have been a proper subject of a special demurrer, see *Jones v. State*, 289 Ga. 111, 115 (2) (c) (709 SE2d 773) (2011); *Doe v. State*, 306 Ga. App. 348, 350 (702 SE2d 669) (2010), Holmes fails to meet his burden of showing that there is a reasonable probability that the outcome of the trial would have been different had trial counsel succeeded in having the assertions redacted; the trial court properly and repeatedly instructed the jury that the allegations in the indictment did not constitute evidence, and clearly instructed the jury as to the State's burden of proof. See *Jackson v. State*, 282 Ga. 494, 498 (3) (651 SE2d 702) (2007); *Hicks v. State*, 315 Ga. App. 779, 785 (4) (728 SE2d 294) (2012); *Robinson v. State*, 312 Ga. App. 736, 746-747 (4) (b) (719 SE2d 601) (2011).

(b) During the trial, a law enforcement officer testified to an incident in which he arrested Holmes and Andre Smith and recovered one of the handguns that was used to kill Rawls; Holmes contends that the officer's testimony regarding the events leading to the arrest was hearsay to which trial counsel should have objected. The officer testified that: a motorist, Styles, while driving on a street in Atlanta, encountered a car blocking the street while the vehicle's occupants talked to a female pedestrian; at that time, Holmes was in the front passenger seat of the stopped car and Smith was in the driver's seat; Styles exchanged words with the two men and drove away; Styles observed the same vehicle shortly thereafter and saw the two men switch seating positions; the car pulled up alongside Styles's car; Smith fired a pistol five times at Styles, who called 911; another law enforcement officer encountered the vehicle with Holmes and Smith inside it; Holmes and Smith abandoned their vehicle and ran; the testifying officer searched the area on foot, and found the two men lying on the ground next to a dog kennel; and he arrested them, and found the pistol in the dog kennel.

---

[2] Although Holmes states that 13 such acts appeared in the indictment, the only two he specifically addresses are: the allegation that Rawls's mother purchased an airplane ticket for Rawls when Rawls was in Miami and attempted to leave Holmes's employ; and, a description of Grant's attire and possessions during the police encounter discussed in Division 2, supra, and the statements she made at the time.

During the hearing on the motion for new trial, trial counsel testified that he was aware of a potential hearsay objection, but was also aware that, in any event, the officer would be able to testify to apprehending Smith and Holmes at the site where he recovered the pistol used to shoot Rawls. Counsel also testified that the officer's testimony allowed him to argue to the jury that the murder weapon was not his client's, but belonged to Smith; during his closing argument, counsel noted that the weapon had been used in "the shooting in Atlanta, not by Mr. Holmes [but] by Andre Smith," and concluded that there was "actually more evidence against Andre Smith" than against Holmes. Thus, we cannot conclude that in failing to raise a hearsay objection, counsel was pursuing an unreasonable strategy. See *Robinson v. State*, 278 Ga. 31, 37 (3) (d) (597 SE2d 386) (2004).

(c) Finally, Holmes contends that trial counsel should have objected to the testimony of a motel owner as it was derived from information gained during the encounter between Holmes and the College Park police officer, see Division 2, supra, and was thus "fruit of the poisonous tree." See *Vergara v. State*, 283 Ga. 175, 182-183 (2) (657 SE2d 863) (2008). However, as discussed above, see Division 2, supra, the evidence garnered from the stop and subsequent search was properly admitted. "[T]he failure to make a meritless objection will not provide support for finding trial counsel ineffective. [Cit.]" *Nations v. State*, 290 Ga. 39, 44 (4) (d) (717 SE2d 634) (2011).

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 17, 2013.

*Frances C. Kuo, Stephen T. Maples*, for appellant.
*Robert D. James, Jr., District Attorney, Deborah D. Wellborn, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General*, for appellee.