**THIRD DIVISION
ANDREWS, P. J.,
DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**August 21, 2013**

# In the Court of Appeals of Georgia

A13A0875. DRYER v. THE STATE.

DILLARD, Judge.

Following a jury trial, Jonathon Dryer was convicted of possession of more than one ounce of marijuana. Dryer now appeals the denial of his motion to suppress evidence, arguing that the trial court erred in ruling that his interaction with the police officer who ultimately arrested him began as a first-tier encounter that did not require reasonable, articulable suspicion of criminal activity. For the reasons set forth *infra*, we agree. Accordingly, we reverse the denial of Dryer's motion to suppress and his conviction.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that around 11:00 p.m. on April 4, 2010, a Douglasville police officer was patrolling the

---

[1] *See, e.g.*, *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010).

parking lot of a local country club and golf course when he noticed a red Mercury Sable that was backed into a parking space near the lower part of the lot. And because the country club had been closed for at least two hours and there were no other vehicles in the parking lot except for a dump truck left by a construction crew, the officer drove toward the Sable in his patrol car to investigate. As the officer approached, the Sable pulled out of the parking space and began driving toward the parking lot's exit, which entailed driving past the officer. At that point, however, the officer activated his patrol car's blue lights, and the Sable immediately stopped.

The officer then exited his patrol car, approached the Sable, and asked the vehicle's sole occupant, thereafter identified as Dryer, what he was doing in the country club parking lot. Dryer responded that he had played golf earlier and that he had just used the restroom located in a building near the pool at that end of the parking lot. But during this conversation, the officer smelled the odor of burnt marijuana and noticed that Dryer appeared nervous. Consequently, the officer asked Dryer for consent to search his vehicle. And when Dryer refused, the officer requested that a K-9 unit be dispatched to the scene.

While awaiting the arrival of the K-9 unit, Dryer admitted to the officer that he had smoked some marijuana and that he still had some marijuana in his vehicle.

Approximately 20 minutes later, the K-9 unit arrived, and during a free-air search, the dog alerted to the presence of illegal drugs. Thereafter, the officers searched Dryer's vehicle and found eight plastic bags containing small amounts of marijuana, nine empty bags containing only marijuana residue, and 22 bags containing marijuana seeds and stems. Ultimately, the amount of marijuana recovered weighed nearly 2.5 ounces.

Dryer was thereafter arrested and charged, via accusation, with one count of possession of marijuana with intent to distribute.[2] Prior to trial, he filed a motion to suppress the drug evidence found during the search of his vehicle. The trial court held a hearing, during which only the officer who initiated the encounter with Dryer testified. And at the conclusion of the hearing, the trial court denied Dryer's motion, finding that the officer's initial contact with Dryer was a first-tier encounter that lawfully escalated into a second-tier encounter after the officer smelled the burnt marijuana. Subsequently, Dryer was tried, and the jury found him guilty of the lesser-included charge of possession of more than one ounce of marijuana.[3] This appeal follows.

---

[2] *See* OCGA § 16-13-30 (j) (1).

[3] *See* OCGA § 16-13-30 (a).

At the outset, we note that in reviewing a trial court's decision on a motion to suppress, "we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous."[4] Further, because the trial court is the trier of fact, its findings "will not be disturbed if any evidence supports them."[5] However, the trial court's application of law to undisputed facts is reviewed *de novo*.[6] With these guiding principles in mind, we turn now to Dryer's sole enumeration of error.

1. Dryer contends that the trial court erred in denying his motion to suppress. Specifically, he argues that the trial court erred in ruling that his initial interaction with the police officer was a first-tier encounter that did not require reasonable, articulable suspicion of criminal activity. We agree.

---

[4] *Rocha v. State*, 317 Ga. App. 863, 866 (733 SE2d 38) (2012) (punctuation omitted).

[5] *Id* (punctuation omitted).

[6] *Id.*

The Supreme Court of the United States has set forth—most notably in *Terry v. Ohio*[7]—three tiers of police-citizen encounters: "(1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause."[8] And in order to "analyze a defendant's claim that he was the victim of an illegal police detention, a court must first categorize the police-citizen encounter at issue."[9]

It is well established that in a first-tier encounter, police officers "may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave."[10] In fact, "[t]here is no threshold requirement and indeed the individual may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any

---

[7] 392 U.S. 1, 21 (III) (88 SCt. 1868, 20 LE2d 889) (1968).

[8] *Minor v. State*, 298 Ga. App. 391, 394 (1) (a) (680 SE2d 459) (2009) (punctuation omitted).

[9] *Thomas v. State*, 301 Ga. App. 198, 200 (1) (687 SE2d 203) (2009).

[10] *Id.* (punctuation omitted).

5

type of restraint and is not encompassed by the Fourth Amendment."[11] Essentially, as long as a reasonable person would feel free to disregard the police and go on about his business, "the encounter is consensual and no reasonable suspicion is required."[12]

In the case *sub judice*, the State contends that the police officer's initial interaction with Dryer was a consensual first-tier encounter, which required no reasonable, articulable suspicion of criminal activity. We disagree. When the officer first observed Dryer's vehicle it was parked, but a few moments later, as Dryer pulled out of the parking space and began driving toward the parking lot exit, the officer activated his patrol vehicle's blue lights. Not surprisingly, Dryer immediately stopped. And indeed, while testifying during the motion-to-suppress hearing, the officer characterized his own actions as initiating "a stop" when Dryer's vehicle attempted to drive past him. Thus, not only did the officer create the impression that Dryer could not leave, he clearly was not going to allow Dryer to do so. Given these circumstances, the officer's initial interaction with Dryer was not a first-tier encounter

---

[11] *Id.* (punctuation omitted).

[12] *Id.* (punctuation omitted).

but, rather, immediately began as a second-tier encounter requiring reasonable, articulable suspicion of criminal activity.[13]

Nevertheless, the State, citing *Collier v. State*,[14] argues that a police officer, whose patrol vehicle's blue lights have been activated, may approach a defendant's stopped vehicle, question the defendant, and that such conduct may still constitute a first-tier rather than a second-tier encounter. However, contrary to the State's argument, the facts in *Collier* are distinguishable from those at issue here. In *Collier*, the arresting officer activated his vehicle's blue lights while en route to investigate

---

[13] *See Satterfield v. State*, 289 Ga. App. 886, 887-88 (1) (658 SE2d 379) (2008) (holding that police officer's stop of defendant's vehicle as it pulled into a private driveway was not a first-tier encounter given that the officer activated his lights when he pulled behind defendant and testified that defendant was not free to leave); *O'Neal v. State*, 273 Ga. App. 688, 690 (616 SE2d 479) (2005) (holding that officer's actions did not constitute a first-tier encounter when officer pulled next to defendant's parked vehicle and activated his blue lights); *McKinley v. State*, 213 Ga. App. 738, 739 (445 SE2d 828) (1994) (holding that officer's actions did not constitute a first-tier encounter when officer pulled next to defendant's parked vehicle, activated his blue lights, and testified during hearing that defendant was not free to leave). *Compare Hutto v. State*, 259 Ga. App. 238, 239 (576 SE2d 616) (2003) (holding that officer's contact with defendant was a first-tier encounter even though he activated his vehicle's blue lights because given the late hour, the possible hazard of other traffic, and the officer's offer of assistance, activating the lights as he stopped behind defendant's motorcycle, which was parked on the side of the highway, did not create impression that defendant could not leave).

[14] 282 Ga. App. 605 (639 SE2d 405) (2006).

an alleged domestic violence incident.[15] After he arrived on the scene and parked, the officer saw the defendant's vehicle—which had no relation to the domestic violence call—back up in the wrong lane of traffic, pull into a driveway nearly 50 yards down the street, and park.[16] At that point, the officer approached the defendant's vehicle and began the questioning that resulted in the discovery of illegal drugs.[17] Based on these specific facts, we held that the officer did not "stop" the defendant but, rather, that the defendant "voluntarily stopped his vehicle in a driveway and that the police officer then approached his vehicle, with no indication that the officer prevented his departure other than by speaking to him."[18] Moreover, and importantly, we also held in *Collier* that the defendant's act of backing up his car in the wrong lane of traffic was evidence of a traffic violation that provided the officer with reasonable,

---

[15] *Id.* at 605-06.

[16] *Id.*

[17] *Id.* at 606.

[18] *Id.* at 606-07.

articulable suspicion to justify a stop of the vehicle.[19] Indeed, we noted that the officer even told the defendant that the improper backing prompted his questioning.[20]

In contrast, here, Dryer did not come upon a scene where an officer was already parked with his vehicle's lights illuminated. Instead, after the officer first observed Dryer's vehicle parked in the lot, he decided to approach and investigate. Dryer then attempted to leave but immediately stopped when the officer activated his patrol vehicle's blue lights. Given these facts, any argument that Dryer would have, nevertheless, felt free to ignore the police officer and continue driving away strains credulity.[21] Thus, the trial court erred in ruling that the police officer's initial contact with Dryer was a first-tier encounter not requiring reasonable, articulable suspicion of criminal activity.

2. Having concluded that this was a second-tier rather than a first-tier encounter, we must now determine whether the police officer had "a particularized

[19] *Id.* at 607-08; *see* OCGA § 40-6-240 (a) ("A driver shall not back a vehicle unless such movement can be made with safety and without interfering with other traffic.").

[20] *Collier*, 282 Ga. App. at 606.

[21] *See Black v. State*, 281 Ga. App. 40, 44 (1) (687 SE2d 203) (2006) (noting that "a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter" (punctuation omitted)).

and objective basis for suspecting [Dryer] of criminal activity."[22] We find that he did not.

There is no evidence in the record that Dryer committed any traffic violation warranting a stop. And while Dryer was parked in the country club parking lot after the club had closed, there was no evidence presented that this was a high-crime area or, more specifically, that any crimes had recently been committed at the club.[23] Additionally, there is no evidence in the record indicating that the officer specifically believed that Dryer was trespassing, but only generally that he did not think there was any reason for Dryer to be there. However, an officer's subjective feeling that a person is "acting in a suspicious way does not amount to a particularized and

---

[22] *Satterfield*, 289 Ga. App. at 888 (2) (punctuation omitted). *See generally Lewis v. State*, 317 Ga. App. 391, 394 (730 SE2d 757) (2012) ("[E]ven if the trial court's asserted ground for denying a motion to suppress is erroneous, we will affirm the ruling if it is 'right for any reason.'" (punctuation omitted)).

[23] *Compare LeRoux v. State*, 300 Ga. App. 310, 312-13 (684 SE2d 424) (2009) (affirming denial of motion to suppress when officer saw no traffic violation, but defendant was driving through a private golf course late at night, and there recently had been crimes committed on the golf course after hours). We further note that "a person's mere presence in a high crime area does not give rise to reasonable suspicion of criminal activity, even if police observe conduct which they believe consistent with a general pattern of such activity." *State v. Hopper*, 293 Ga. App. 220, 223 (666 SE2d 735) (2008) (punctuation omitted).

objective basis for suspecting him of criminal activity."[24] Thus, the trial court erred in denying Dryer's motion to suppress evidence.[25] Accordingly, we reverse the denial of Dryer's motion and his conviction.

*Judgment reversed. Andrews, P. J., and McMillian, J., concur.*

---

[24] *Ewumi v. State*, 315 Ga. App. 656, 661 (1) (727 SE2d 257) (2012) (punctuation omitted).

[25] *See Smith v. State*, 245 Ga. App. 613, 619 (538 SE2d 517) (2000) (reversing denial of motion to suppress because officer's decision to stop defendant's vehicle "was based simply on an unparticularized suspicion or hunch, which is not sufficient to justify an investigative stop" (punctuation omitted)); *State v. Winnie*, 242 Ga. App. 228, 229-30 (529 SE2d 215) (2000) (holding that police officer lacked reasonable, articulable suspicion to justify investigatory stop of defendant's truck when officer observed truck pull into the parking lot of a closed store at 4:00 a.m. and then begin to drive away when officer approached).