**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 21, 2014**

# In the Court of Appeals of Georgia

A13A2164. THE STATE v. HOLMES.                           DO-081 C

DOYLE, Presiding Judge.

Following the grant of Travis Holmes's motion to suppress evidence obtained during a vehicle stop, the State appeals, contending that the trial court erred by ruling that the officer lacked adequate suspicion to stop Holmes's vehicle. For the reasons that follow, we affirm.

At the outset, we note that there are three fundamental principles which must be followed when conducting an appellate review of a trial court's ruling on a motion to suppress. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard

to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.[1]

To the extent that "the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts."[2]

Under this standard, the record shows that in the early morning hours following Halloween, Deputy Justin Carter was dispatched to a local baseball park to respond to a report that "several people were basically destroying the baseball field[]." Deputy Carter went to the location, which was a residential area, and encountered a Honda Passport traveling at a "high rate of speed." He stopped the vehicle, which did not contain Holmes, and noted approximately 11 young people occupying the vehicle, sitting on each other's laps. The driver denied being at the baseball fields and

---

[1] (Punctuation and citations omitted.) *Brown v. State*, 293 Ga. 787, 802-803 (3) (b) (2) (750 SE2d 148) (2013), quoting *Miller v. State*, 288 Ga. 286, 286-287 (702 SE2d 888) (2010).

[2] *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 426) (2012), citing *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

explained that they had been at a house party nearby. Carter smelled a strong odor of alcohol in the vehicle; the driver denied having consumed any, but the passengers all admitted to having consumed alcohol. Carter later determined that the driver had consumed alcohol but was safe enough to drive.

Carter informed dispatch that the Honda was not present at the baseball field, but that he "had several intoxicated individuals." While the Honda was still stopped, a second vehicle (also not containing Holmes) approached and stopped "basically, because there was nowhere to go. He just happened to be behind the first vehicle." By that time, a second officer had responded to the scene and engaged the second driver "to speak to [him] and kind of let [him] know that I was dealing with these people and ran into other problems."

A third officer, Deputy Mark Patterson, had also responded to the scene based on the dispatch report about vandalism at the baseball field and reckless driving on the adjacent road. He briefly investigated the fields and then drove to the scene where the other officers were parked with the stopped vehicles. Deputy Patterson observed the headlights of a third vehicle, a silver Acura driven by Holmes, approaching from the same direction as the first two vehicles. As the Acura approached, Deputy Patterson activated his emergency lights and shined his spotlight on Holmes to stop

the vehicle. Deputy Patterson spoke to Holmes, noticed an odor of alcohol, and learned that Holmes had consumed several beers prior to driving. Deputy Patterson then directed Holmes to the nearby baseball field parking lot where Deputy Carter was addressing potential alcohol violations from the first two cars. Deputy Patterson later fully investigated the baseball field and found no damage.

Holmes was arrested and cited for driving under the influence ("DUI") based on a .142 blood alcohol concentration and for being in possession of alcohol while under the age of 21. The State charged Holmes with DUI per se,[3] DUI less safe,[4] DUI under the age of 21,[5] and underage possession of alcohol.[6] Holmes moved to suppress the evidence gathered while he was stopped by Deputy Patterson, and following a hearing, the trial court granted the motion.

The State now appeals, arguing that the arresting deputy had sufficient suspicion to execute the stop of Holmes's vehicle.

---

[3] OCGA § 40-6-391 (a) (5).

[4] OCGA § 40-6-391 (a) (2).

[5] OCGA § 40-6-391 (k) (1).

[6] OCGA § 3-3-23 (a) (2).

4

What Georgia law requires to justify an investigatory stop of a vehicle is an articulable suspicion of wrongdoing. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. This specific, articulable suspicion must be based on the totality of the circumstances – e.g., objective observations, information from police reports, the modes or patterns of certain kinds of lawbreakers, and the inferences drawn and deductions made by a trained law enforcement officer.[7]

Here, the deputy who stopped Holmes testified that he responded to the scene based on a dispatch call about damage to the baseball field and reckless driving. By the time he stopped Holmes, Deputy Patterson had briefly visited the baseball field, but he did not observe anyone there. During his direct testimony, Deputy Patterson described stopping Holmes's vehicle as soon as he saw its headlights because, "[f]irst and foremost, [I noticed] that it was on that road that time of the morning. Because around 2:20 in the morning, there's no traffic on that roadway. And also it was – the 911 call that the people that were tearing up the baseball fields were also driving on that roadway." But on cross-examination, he added a new reason, "I noticed [Holmes] was coming at a pretty rapid pace. And I'm not sure if you can tell from the video or

_____

[7] (Punctuation omitted.) *Ciak v. State*, 278 Ga. 27, 30 (3) (597 SE2d 392) (2004). See also *Holmes v. State*, 293 Ga. 229, 230-231 (2) (744 SE2d 701) (2013) (applying the same standard).

5

not, but he was actually straddling the yellow line when he came around the curve." Challenging this testimony, Holmes's counsel highlighted the fact that the deputy did not state those facts in his written incident report. In light of these weaknesses in the deputy's testimony, the trial court's order explicitly found that "[t]he vehicle was only stopped because of the alleged [baseball field] damage. Deputy Sheriff Patterson noted no reason for stopping the vehicle in the report he made *that night* other than what is related back to the 911 call [about the ball field damage]."[8] Thus, the trial court did not find credible the deputy's testimony that he observed Holmes commit potential speed or lane violations which would have justified a traffic stop.[9]

A trial court taking evidence on a motion to suppress "is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony. Thus, a rational trier of fact can choose to reject even

---

[8] (Emphasis supplied.)

[9] The record includes a video recording from Deputy Patterson's dashboard camera. We have reviewed the video and determined that it is inconclusive as to the alleged traffic violations. See generally *Clay v. State*, 290 Ga. 822, 825, n. 1 (725 SE2d 260) (2012) ("This Court owes no deference to a trial court's factual findings gleaned from a review of a videotape that are not the subject of testimony requiring the trial court's weighing of credibility or resolving of conflicts in the evidence.").

6

'undisputed' testimony,"[10] and we must accept the trial court's interpretation of the testimony it observed, however plausible the testimony appears to this Court.[11]

> Motions to suppress, by their nature, often turn on difficult questions of credibility and specific findings of fact. The principles of appellate review applicable to these motions were set forth to ensure that, in difficult cases such as this one, the trial court's resolution of these issues would be given deference, as only the trial court actually sees the witnesses and hears their testimony.[12]

In light of the trial court's findings, and in the absence of some other particularized suspicion, we conclude that the deputy lacked authority to stop Holmes.[13] Accordingly, based on our deference to the trial court's credibility

---

[10] (Punctuation omitted.) *Brown*, 293 Ga. at 804 (3) (b) (2), quoting *Tate v. State*, 264 Ga. 53, 56 & n.5 (440 SE2d 646) (1994).

[11] See id.

[12] *Miller*, 288 Ga. at 290 (2).

[13] We decline to hold that the ongoing investigation of the other vehicles for underage drinking and DUI authorized the deputies to execute an investigatory stop of every car that came down the public road. Georgia case law is clear that, absent some *particularized* suspicion of wrongdoing, merely driving down a public road late at night – whether in a quiet residential subdivision, in a high crime area, or in a way that fits a known "pattern" of criminal activity – does not justify an investigatory stop. See *Hughes v. State*, 269 Ga. 258, 260 (497 SE2d 790) (1998) (finding a lack of sufficient basis to justify an investigatory stop "merely because the person is a white man in a black neighborhood late at night, who picks up a black man at a location

determinations and factual findings,[14] we discern no reversible error in the trial court's grant of Holmes's motion to suppress.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

police consider a high-crime area, and who then drives slowly in a circular fashion through the neighborhood."); *Young v. State*, 285 Ga. App. 214, 215-216 (2007) ("The act of driving at night, lawfully, on a public road [even] in a high crime area [with a lawnmower in the trunk] does not justify an investigative stop in the absence of additional circumstances," despite being in an area of reported thefts.) (punctuation omitted); *Lyttle v. State*, 279 Ga. App. 659, 662 (2006) (investigatory stop not authorized because "the deputy did not observe [the defendant] doing anything other than driving at night, lawfully, on a public road in a high crime area"); *Attaway v. State*, 236 Ga. App. 307, 309 (511 SE2d 635) (1999) (reversing denial of motion to suppress because the "only arguably suspicious behavior . . . was driving around a subdivision several times late at night"). Compare *Jones v. State*, 156 Ga. App. 730 (275 SE2d 778) (1980) (concluding that an investigatory stop was justified because "[t]he area was a new subdivision just being constructed [with no outlets], and there had been reports of various problems in the new subdivisions throughout the county.").

[14] See *Brown v. State*, 293 Ga. at 803 (3) (b) (2) ("the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment."), quoting *Miller*, 288 Ga. at 286 (1).