**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**April 30, 2014**

# In the Court of Appeals of Georgia

A14A0417. WILLIAMS v. THE STATE.

McMILLIAN, Judge.

This appeal follows our grant of Jabari Williams's application for interlocutory review of the trial court's order denying his motion to suppress evidence of contraband and a weapon seized during a vehicle search. Because we find that the arresting officers did not have a particularized and objective basis for suspecting that Williams was engaged in criminal activity prior to the stop, we now reverse the denial of his motion to suppress.

In *Miller v. State*, 288 Ga. 286 (702 SE2d 888) (2010), our Supreme Court reaffirmed that appellate courts conducting a review of a trial court's ruling on a motion to suppress must follow three fundamental principles:

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation omitted.) Id. at 286 (1).

However, it is equally well established that

[w]hile the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citation omitted.) *State v. Underwood*, 283 Ga. 498, 500 (661 SE2d 529) (2008). *Dryer v. State*, 323 Ga. App. 734, 736 (747 SE2d 895) (2013). We apply these principles with equal force regardless of whether the trial court upholds the validity of the seizure or determines that the evidence must be suppressed. *Miller*, 288 Ga. at 286 (1).

2

We turn now to the application of these overarching legal principles to the facts of this case. The only testimony at the hearing on the motion to suppress was given by Officer P. Sullivan, who was one of the DeKalb County police officers who arrested Williams. At the time of Williams's arrest, Sullivan was employed by the DeKalb County police department and assigned to the Tucker Precinct Neighborhood Enforcement Team Unit ("NET Unit"), which was a task force created to handle, among other things, drug activity in areas where there was a high incident of such activity.

On the day in question, the NET Unit was assisting the narcotics unit in conducting surveillance of Apartment J at the Alden Ridge Apartment Complex; this surveillance was based on "previous arrests made at that location," and the trial court found that it was part of an ongoing investigation for illegal narcotic sales. In order to confirm the proper apartment was under surveillance, an officer knocked on the door of Apartment J under the pretext that a 911 call had been received from that location. When the door opened, the officer detected a "strong" odor of marijuana coming from inside the apartment. The officer left the apartment after being informed that a 911 call had not been made from that location.

During the surveillance, a NET sergeant was positioned so that she could see the foot and vehicle traffic coming and going from inside the apartment, which was characterized as "heavy." Other members of the NET unit were positioned nearby, but did not necessarily have a view of the apartment. However, the sergeant communicated her observations to the other officers via radio, and those officers would then initiate traffic stops and/or arrests of the individuals leaving the apartment once they had exited the apartment complex onto nearby Brockett Road. According to Sullivan, the NET team was "basically" stopping everyone who was observed going into and out of Apartment J.

Williams, who was riding as a front seat passenger in a white PT Cruiser, arrived at the apartment complex about an hour after the officer made the pretextual visit to the apartment and smelled marijuana inside. The PT Cruiser parked near the apartment, and Williams, who was carrying a backpack, exited the vehicle and walked into the residence. Less than five minutes later, Williams came back out of the apartment with the same backpack, re-entered the car, and drove out of the apartment complex. The sergeant notified the other officers that the car was leaving the complex, and Sullivan and another officer initiated an investigative stop of the vehicle after it exited onto Brockett Road.

4

Sullivan and the other officer smelled a "large" odor of marijuana as they approached the trunk of the vehicle, and the odor was emanating from inside the vehicle. The officers asked the occupants of the vehicle if they had any illegal substances in the vehicle, which they denied. Sullivan then informed the driver of the vehicle that they had probable cause to search the vehicle based on the strong odor of marijuana coming from inside the vehicle, and that search revealed a four small bags and two large "freezer-size" plastic bags of marijuana and a 9-millimeter Taurus handgun inside the backpack that Williams had been seen carrying into and out of Apartment J. Based on this evidence, Williams was later charged with violating the Georgia Controlled Substances Act and possession of a firearm by a convicted felon.[1]

On appeal, Williams argues that the evidence found during the search should have been suppressed because the stop of the vehicle was not supported by a particularized and objective basis for suspecting he was engaged in criminal activity. We agree.

> [A]lthough an officer may conduct a brief investigative stop of a
> vehicle, such a stop must be justified by specific and articulable facts

---

[1] The indictment has not been included in the record on appeal. However, it appears undisputed that Williams was charged with felony possession of marijuana. In any event, the exact nature of the charges against Williams is irrelevant.

which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The U. S. Supreme Court recognized the difficulty in defining the elusive concept of what cause is sufficient to authorize police to stop a person, and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer[2] has a particularized and objective basis for suspecting the particular person stopped of criminal activity. This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.

(Citations and punctuation omitted.) *Hughes v. State*, 269 Ga. 258, 259-260 (1) (497 SE2d 790) (1998).

Thus,

the question presented to the trial court was whether the investigative stop was proper in that it was justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. This specific, articulable suspicion must be based on the totality of the circumstances – e.g., objective observations, information from police reports, the modes or patterns of certain kinds of lawbreakers, and the

---

[2] We note that Williams makes no issue of the fact that the arresting officers relied on the collective knowledge of the other officers at the scene in making the stop. Clearly, this was permissible. *Edmond v. State*, 297 Ga. App. 238, 239 (676 SE2d 877) (2009).

inferences drawn and deductions made by a trained law enforcement officer.

(Citation and punctuation omitted.) *Holmes v. State*, 293 Ga. 229, 230-232 (2) (744 SE2d 701) (2013).

Although there are numerous appellate cases interpreting and applying these precepts, we find our Supreme Court's opinion in *Hughes v. State*, 269 Ga. 258, 259-260 (1) (497 SE2d 790) (1988), and our opinion in *State v. Hopper*, 293 Ga. App. 220 (666 SE2d 735) (2008), to be particularly instructive in this case.

The facts in *Hopper*, are strikingly similar to the case at hand. In *Hopper*, as in the present case, police had set up a surveillance operation after they had confirmed that drugs were being sold at a location. During these surveillance operations, which had occurred on other occasions prior to the day on which Hopper was arrested, the surveillance officers had observed a pattern of individuals arriving in vehicles, exiting the vehicles, going into the house and then coming back out after a brief time. In this instance, a van arrived, and similar to the previous occupants, the driver exited the vehicle, went into the house, and came back outside after a few minutes. The driver then met someone at the back of his van, at which time "'there was an interaction of some kind, talking,'" although the officers did not observe

money or containers exchanging hands. 293 Ga. App. at 221. The lead surveillance officer "due to her experience, knowledge, and training –[and] the pattern that he pulled in, went into the house and came back out and left in a few minutes" believed that Hopper had just purchased drugs. A nearby officer was directed to initiate an investigative stop of the van to check for drugs, and contraband was found in the vehicle during the ensuing search. (Punctuation omitted.) Id. at 221-222

The trial court subsequently suppressed the evidence found during the search, and we upheld that ruling on appeal. We found that the officer's observation that Hopper followed a pattern by pulling up to the house, going into the house and coming back out in a few minutes, "combined with what [police] had learned from [their] investigation" was insufficient to show that the officer had a particularized suspicion that Hopper was engaged in wrongdoing. *Hopper*, 293 Ga. App. at 222. In reaching this conclusion, we noted that Hopper had not otherwise been connected to the house, had committed no traffic offense or attempted to avoid police, and was not observed by police engaging in any sort of drug transaction. "Rather, all police knew about Hopper was that he went into a suspected drug house in the middle of the afternoon, stayed for a few minutes, and then left and drove away," which showed nothing more than Hopper fit a general pattern of behavior. Id. at 222. Accordingly,

we concluded that the detaining officer did not have a particularized, objective basis for concluding that Hopper was engaged in wrongdoing and thus the investigative stop of Hopper's vehicle was not supportable under the Fourth Amendment.

Similarly, in *Hughes,* our Supreme Court concluded that an investigative stop in that case was not authorized based on a police officer's observation that defendant's conduct fit the general pattern of whites coming into a predominantly African-American neighborhood and then making drug transactions in vehicles by picking up the seller, driving around a short distance, and then returning to drop off the seller in the same location. *Hughes*, 269 Ga. at 260. The Supreme Court reached this conclusion although the officer testified that he was regularly assigned to the neighborhood in question and had made numerous arrest of individuals for drug offenses and prostitution who engaged in this pattern of conduct. Id. at 261. However, our Supreme Court concluded that "[w]hile such behavior might justify an officer in closely observing the individuals engaged in that behavior, it is not alone sufficient to indicate that the individuals are or might be engaged in illegal activity so as to provide a reasonable, articulable suspicion to stop those individuals[,]" and that, therefore the evidence found during the search should have been suppressed. Id. at 261.

In the present case, similarly to *Hughes* and *Hopper*, Williams's conduct appeared to fit a pattern of behavior of individuals who were going quickly in and out of a location where police knew drugs were present and suspected drugs were being sold. The arresting officer testified that "basically . . . whoever is observed going into Apartment J and leaving" was being stopped, and that Williams was stopped solely for this reason. Further, although the officer testified that other "stops and/or arrests" had been made that day of individuals engaging in this conduct, the officer gave no indication that all, or indeed any, of those stops yielded arrests for contraband. Nor did the officer have any knowledge about Williams or any previous drug-related activity on his part. Thus, it was Williams's conformity to a general pattern of behavior, and not a particularized suspicion, that led to the stop. "Georgia case law is clear that, absent some *particularized* suspicion of wrongdoing, merely [acting in a way] that fits a known 'pattern' of criminal activity – does not justify an investigatory stop." *State v. Holmes*, ___ Ga. App. ___, n. 13 (Case No. A13A2164, decided March 21, 2014). (Emphasis in original.) *Hopper*, 293 Ga. App. at 223. Accordingly, we find that the investigative stop in this case was not based on a particularized and objective suspicion that Williams was engaged in criminal activity and that the evidence found during the search of his backpack should have been

suppressed. *Dryer*, 323 Ga. App. at 739 (2) (officer's subjective feeling that a person is 'acting in a suspicious way does not amount to a particularized and objective basis for suspecting him of criminal activity.") (citation and punctuation omitted); *Adkinson v. State*, 322 Ga. App. 1, 2 (743 SE2d 563) (2013) (evidence suppressed where officer saw defendant engage in behavior consistent with buying drugs by briefly visiting a hotel located in an area known for heavy drug activity); *Pritchard v. State*, 300 Ga. App. 14, 15-16 (684 SE2d 88) (2009) (evidence suppressed when only evidence to support the stop was that defendant's car was seen in front of a residence that had recently been raided for drugs); *Emery v. State*, 249 Ga. App. 114 (548 SE2d 23) (2001) (stop not authorized where defendant drove away from house shortly before a search warrant was to be executed). Cf. *Satterfield v. State*, 289 Ga. App. 886, 899 (2) (658 SE2d 379) (2008) (stop justified when defendant spent five minutes in residence of known drug dealer where police had observed drug activity, and defendant left house in a vehicle with a known drug dealer and went to the dealer's residence).

*Judgment reversed. Phipps, C. J., and Ellington, P. J., concur.*