**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 4, 2016**

# In the Court of Appeals of Georgia

A16A0788. GAITHER v. THE STATE.

PHIPPS, Presiding Judge.

Yolande Gaither was charged with two counts of driving under the influence ("less safe" and unlawful alcohol concentration), an open container violation, and driving with an expired license.[1] She filed a motion to suppress evidence seized as a result of a traffic stop, asserting, inter alia, that the arresting officer lacked articulable suspicion to stop her. The trial court denied Gaither's motion, and we granted her application for interlocutory appeal. For the reasons that follow, we reverse.

During Gaither's suppression hearing, White County Deputy Sheriff Jared Baker testified that, at approximately 1:38 a.m. on March 23, 2014, he saw Gaither's truck turn left from a turn lane on Highway 17 "into the side entrance to the Hardman

---

[1] OCGA §§ 40-6-391, 40-6-253, 40-5-20 (a).

House," a business establishment that was closed at the time. Without explaining what type of establishment the Hardman House was, the officer testified that "[t]hat area is generally closed to the public." As he followed Gaither up a hill, she passed a driveway about 50 feet "before the top where the gate is that says the road is closed."

As soon as Gaither passed that driveway and reached the gate, the officer activated his patrol vehicle's blue lights. Gaither turned her truck around in front of the patrol car and began to drive back toward Highway 17. As she passed the patrol vehicle, the officer verbally instructed her to stop the car. Gaither proceeded "a few more feet" before stopping her truck behind the patrol vehicle. With the blue lights still flashing, the officer exited his vehicle and approached the driver's side of Gaither's truck. During the traffic stop, the officer saw an open container of alcohol in her vehicle, and he ultimately arrested Gaither for DUI.

When asked why he had activated his vehicle's blue lights, the officer responded:

> A couple of the things we looked at is, one, that the area is closed and we do have – have some[ ]things going on of that nature around that time in the evening. Me being a traffic enforcement officer, I also believe that people who see that I'm behind them and turn and go to a

2

closed area like that may be trying to avoid detection for a traffic – you know a traffic offense that's going on. . . . At the point where she passed that only driveway that I believe she could have went through lawfully, when she passed that I realized that she was more suspicious than to – she didn't know where she was. She possibly was going up there . . . to commit a crime.

During cross-examination, the officer testified that he did not observe Gaither commit any traffic offenses before he activated his vehicle's blue lights. Gaither had turned off Highway 17 by using a turn lane on the highway, and there were no signs indicating that the road onto which she had turned was closed to the public. The officer did not know who owned a building located at the top of the hill, which he believed to be abandoned, and the Hardman House was located "below" the road onto which Gaither had turned. The officer emphasized that he activated his vehicle's blue lights "solely because it was a suspicious vehicle."

At the hearing, the State conceded that this was a second tier stop but argued that it was sufficiently supported by reasonable suspicion. The trial court agreed and denied Gaither's motion to suppress. The court found that "the traffic stop began as a 'citizen's assist' or a 'suspicious vehicle,' and given the late hour and the closed state-owned historical site, there was legitimate and articulable reasonable suspicion

3

for Deputy Baker to conduct a traffic stop on [Gaither's] vehicle in accordance with his duty as a law enforcement officer." The court noted further that Gaither had failed to stop when the officer activated his blue lights, driving past his marked patrol vehicle before the officer verbally requested her to stop.

On appeal, Gaither argues that, when the officer turned on his vehicle's blue lights, their interaction became a second tier encounter requiring reasonable, articulable suspicion. She contends that the State did not meet its burden of showing that the officer had a particularized and objective basis for suspecting that she was, or was about to be, engaged in criminal activity when he initiated the stop.

"[O]n a motion to suppress, the State has the burden of proving that a search was lawful."[2] In reviewing a trial court's decision on a motion to suppress, this Court accepts the trial court's ruling on disputed facts unless clearly erroneous, but reviews the application of the law to the facts de novo.[3] This Court construes the evidence in the light most favorable to the trial court's ruling.[4]

---

[2] *State v. Hammond*, 313 Ga. App. 882, 883-884 (723 SE2d 89) (2012) (punctuation and footnote omitted).

[3] Id. at 884.

[4] *State v. Richards*, 327 Ga. App. 58 (755 SE2d 367) (2014).

"At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief 'stops' or 'seizures' that require reasonable suspicion; and 'arrests,' which can only be supported by probable cause."[5] "In a first-tier encounter, an officer may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave."[6] "[A] citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter. Such conduct may not provide the basis for elevating the encounter to a second-tier *Terry*[7] stop."[8]

"In a second-tier encounter, . . . an officer may stop and detain a person briefly when the officer has a particularized and objective basis for suspecting the person is involved in criminal activity."[9] "[T]he officer must possess more than a subjective,

---

[5] *State v. Gauthier*, 326 Ga. App. 473, 475 (1) (756 SE2d 705) (2014) (footnote omitted).

[6] *Hammond*, supra at 884.

[7] *Terry v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968).

[8] See *Groves v. State*, 306 Ga. App. 779 (703 SE2d 371) (2010) (punctuation and footnotes omitted).

[9] *Hammond*, supra (punctuation and footnote omitted).

unparticularized suspicion or hunch[.]"[10] Rather, an investigative stop "must be justified by specific and articulable facts which, taken together with rational inferences from those facts," give rise to reasonable suspicion of criminal activity.[11] "[T]he question presented to the trial court [is] whether the investigative stop was proper in that it was justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."[12] "[A]bsent some *particularized* suspicion of wrongdoing, merely acting in a way that fits a known 'pattern' of criminal activity—does not justify an investigatory stop."[13] Thus, a set of generally suspicious facts may warrant close observation by law enforcement, and yet not justify a second-tier encounter.[14]

---

[10] Id. (punctuation omitted). See also *Dryer v. State*, 323 Ga. App. 734, 739 (2) (747 SE2d 895) (2013) ("[A]n officer's subjective feeling that a person is acting in a suspicious way does not amount to a particularized and objective basis for suspecting him of criminal activity.") (punctuation and footnote omitted)).

[11] *Williams v. State*, 327 Ga. App. 239, 241-242 (758 SE2d 141) (2014) (citation omitted).

[12] Id. at 242 (citation omitted).

[13] Id. at 244 (emphasis in original; citations and punctuation omitted).

[14] See *State v. Winnie*, 242 Ga. App. 228, 230 (529 SE2d 215) (2000) (holding that reasonable suspicion was lacking where an officer saw a truck turn into the parking lot of a closed Salvation Army facility at 4:00 a.m., and then begin to drive away when the officer approached).

In its ruling, the trial court noted Gaither's failure to stop immediately when the officer activated his blue lights. The State contends on appeal that Gaither "was not actually detained until she stopped her car *after*[15] driving past [the officer] and his flashing blue lights" and that her "act of fleeing" gave the officer reasonable suspicion to detain her.

1. Viewing the evidence in favor of the ruling, the trial court clearly erred in finding that Gaither failed to stop when the officer activated his blue lights. The officer testified that he activated his blue lights because he suspected Gaither was "going up there to . . . commit a crime." A reasonable person would not have felt free to leave upon seeing the patrol vehicle's blue lights and hearing the uniformed officer's instruction to stop a few seconds later.[16]

Gaither's limited maneuvering in those intervening few seconds is distinguishable from the conduct at issue in cases such as *State v. Stilley*, in which we held that a suspect's failure to pull over when an officer activated his blue lights and

---

[15] (Emphasis in original.)

[16] See *Dryer*, supra at 735, 737 (1) (holding that a second-tier encounter occurred where an officer in a patrol car approached a car in the parking lot of a country club that had been closed for at least two hours, the car began to exit the lot, and the officer activated his patrol lights).

siren was sufficient to purge the taint of an otherwise illegal stop.[17] In *Stilley*, we reversed the grant of a motion to suppress where the defendant violated OCGA § 40-6-395 (a) by driving two to three miles after an officer activated his lights and siren before a second officer helped force the defendant to stop.[18] Here, Gaither merely turned her truck around and stopped a few feet past the officer's vehicle.

2. The trial court erred in finding that the officer articulated "specific and articulable facts" sufficient to give rise to "a particularized and objective basis" for suspecting Gaither of criminal activity so as to authorize the traffic stop.[19] First, the officer did not see Gaither commit a traffic violation. Second, there was no evidence that he had received any report of criminal activity in the vicinity. Even if the officer had testified "that thefts are common at this time of night," as the trial court found, such a statement would have been no more than an unparticularized suspicion or

---

[17] 261 Ga. App. 868, 870-871 (584 SE2d 9) (2003). See also *Prather v. State*, 279 Ga. App. 873, 876-877 (633 SE2d 46) (2006) (where the defendant fled by vehicle and then on foot after an officer approached the defendant's vehicle in a parking lot, activated his blue lights, and instructed him to put his hands on the steering wheel).

[18] Id.

[19] See *Williams*, supra at 241-242.

hunch, which is insufficient to justify an investigative stop.[20] Third, the deputy testified that there was no indication that the road on which he stopped Gaither was closed to the public before the gate at the top of the road.[21] To the contrary, Highway 17 contained a turn lane leading to the road, which, the officer testified, led to at least one driveway. Similarly, although the trial court found that the location was a "closed state-owned historical site," the record does not support this finding. Accordingly, the trial court erred in denying Gaither's motion to suppress.

*Judgment reversed. Dillard and Peterson, JJ., concur.*

---

[20] See *Smith v. State*, 245 Ga. App. 613, 615 (538 SE2d 517) (2000) (stop was not justified where suspect was merely parked after midnight in a general area of reported burglaries and pulled away quickly as an officer drove toward his car).

[21] See *Dryer*, supra at 739 (2) ("[T]here is no evidence in the record indicating that the officer specifically believed that Dryer was trespassing, but only generally that he did not think there was any reason for Dryer to be there.").